## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD F. GONZALEZ and | ) | |
| RACHEL GONZALEZ, his wife, | ) | |
| P.O. Box 439039 | ) | |
| San Diego, California 92143 | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO.: |
| | ) | |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF LABOR | ) | |
| Frances Perkins Building | ) | |
| 200 Constitution Avenue, NW | ) | |
| Washington, DC 20210 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ELAINE L. CHAO, in her | ) | |
| official capacity as | ) | |
| Secretary of Labor, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Comes now Plaintiffs Richard and Rachel Gonzalez, through their attorneys HANNON

LAW GROUP, LLP, and for their Complaint against Defendants, state as follows:

### Jurisdiction and Venue

1.    This Court has jurisdiction pursuant 28 U.S.C. § 1331 and 28 U.S.C. §

2201, which permits the Court, in a case of actual controversy within its jurisdiction, to

declare the rights of any interested party seeking such declaration.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1331.

**Introduction**

3.      This is a Complaint for declaratory and injunctive relief against the Secretary of

Labor and the Department of Labor (collectively "DOL") on behalf of Richard and Rachel

Gonzalez for actions taken by DOL in connection with an injury that occurred to Rachel

Gonzalez when she was an employee of the United States government.

4.      Richard and Rachel Gonzalez filed a third party lawsuit as a result of injuries that

occurred to Rachel Gonzalez when she was employed as a receptionist at the United States

Embassy in Mexico City.  Richard Gonzalez's claim for Loss of Consortium was settled in full

by payment to him of $625,000, less the attorney's fees and costs of the litigation.  Rachel

Gonzalez retained her claim for personal injury which she continued to litigate.  DOL maintains

that solely by virtue of his spousal relationship to Rachel Gonzalez, Richard Gonzalez recover

must be limited to 25% of the total settlement.  In addition, DOL maintains that Richard must

disgorge to the DOL $152,091.06 of the amount of the settlement received by him to repay

workers' compensation payments made to Rachel Gonzalez.  Should Richard Gonzalez not pay

this amount to DOL, DOL threatens to satisfy that amount by withholding ongoing workers'

compensation payments currently being paid to Rachel Gonzalez.

5.      Plaintiffs are seeking a declaration that DOL has unconstitutionally exceeded its

statutory authority by demanding payment to it of monies received by Richard Gonzalez in

settlement of his Loss of Consortium claim and by threatening to withhold ongoing workers'

compensation benefits to Rachel Gonzalez if he does not.  Plaintiffs contend that there is no

statutory authority under the Federal Employees Compensation Act ("FECA") that permits the

DOL to limit Mr. Gonzalez settlement or to take the settlement monies from him, solely by

virtue of his spousal relationship with Rachel Gonzalez.

6.     Furthermore, DOL in calculating the amount it demands from Richard Gonzalez, has unconstitutionally exceeded its statutory authority by disallowing certain expenses and costs of the litigation which resulted in the settlement of his Loss of Consortium claim.

7.     Finally, Plaintiffs respectfully request that the Court enjoin DOL from taking any action to recover the amount it seeks from Richard Gonzalez or his attorneys, and enjoin DOL from taking any action that diminishes Rachel Gonzalez's ongoing workers' compensation benefits.

### Procedural History

8.     On June 11, 1997, Rachel Gonzalez was involved in an elevator accident while employed at the United States Embassy in Mexico City, where she worked as the Ambassador's receptionist. Rachel was and is married to Richard Gonzalez. As a result of the accident, Rachel Gonzalez was totally and permanently disabled from employment; consequently, she applied for and is continuing to receive workers' compensation benefits under the Federal Employees Compensation Act ("FECA").

9.     As a result of the accident, Ms. Gonzalez suffers from several serious medical conditions, including stroke, paralysis, and prolonged post traumatic stress disorder, all requiring many and continuing hospitalizations, and medical and psychiatric care.

10.     Richard and Rachel Gonzalez brought separate claims, Richard for Loss of Consortium and Rachel for Personal Injury, against third-party defendants ABM Industries Incorporated ("ABM"), Amtech Elevator Services ("Amtech"), and International Elevators S.A., de C.V. ("IDESA") in an action filed in the Superior Court of the District of Columbia. The Complaint alleged that these companies, pursuant to a contract with the Department of State, had a duty to ensure that the elevator did not malfunction.

11.     As required by FECA, Rachel Gonzalez through counsel gave notice to the Department of Labor of the filing of the lawsuit. In addition, before filing the lawsuit, Rachel Gonzalez through counsel notified the Department of Labor of her claim, and invited it to join in her lawsuit. Under the contract between the Department of State and the third-party defendants, the United States was entitled to indemnity against all losses caused by the negligence of the third-party defendants. Pursuant to that indemnity provision, the United States had the right to recover from the third-party defendants all of the FECA benefits paid to Rachel Gonzalez. The Department of Labor did not respond to this request.

12.     Thereafter, at every stage during the progress of the case, including the mediation stage, counsel notified the Department of events in the case and evaluations of issues and urged it to participate and take control of the proceeding. The Department of Labor refused, and stayed away. It filed nothing and never appeared. When, at mediation, the parties undertook serious settlement negotiations, the Judge in the Superior Court proceedings joined with plaintiffs' counsel in requesting the Department to participate in that process. Keeping its distance, the Department was content with instructing plaintiffs' counsel that he and his clients were free to determine the amount of any settlement, but insisted that Rachel Gonzalez should continue to prosecute her litigation against the Mexican company. This free rein was all the plaintiffs were able to learn of the Government's attitude toward a possible settlement.

13.     The effect of the Department's abstention was that the plaintiffs were left to develop their own settlement strategy with the advice of counsel, a strategy that would cope with their divergent interests: on the one hand, because Rachel had been paid FECA compensation, it was her duty to repay it from moneys she received in the third-party suit; and, on the other,

Richard's claim for Loss of Consortium was not affected by FECA; he was paid no FECA compensation and there was no FECA lien against proceeds he might receive.

14.     Richard and Rachel Gonzalez then engaged in mediation without the Department's intercession. With their counsel's guidance and the trial judge's approval, they adopted the following strategy that underlies the settlement: They released their claims against the U.S. companies in their lawsuit; Richard Gonzalez dismissed his claim against the Mexican company; and, as a condition of the settlement, Rachel Gonzalez continued her claim against the Mexican company, choosing to seek compensation for her devastating personal injuries from that defendant and allowing her husband to be compensated in full for his Loss of Consortium by the settlement obtained with the U.S. companies.

15.     The Department's inaction and its apparent indifference entitled Rachel and Richard Gonzalez to construct their own strategy to maximize the value of their independent claims. Pursuant to provisions of FECA, the Department of Labor had the right to take over the litigation by Rachel Gonzalez and to direct that litigation as it thought fit in connection with its statutory claim. The Department elected to do nothing.

16.     The Government's calculated choice not to intervene makes it unfair that the Government should be allowed to "speak" afterwards by undoing the strategy the parties settled on in its absence. 5 U.S.C. § 8132 is not self-operative in this respect. It does not order a beneficiary to prefer herself as opposed to her husband. Where she and her husband sue several defendants, she is not obligated to "receive" moneys obtained by a settlement that is first reached with some of the defendants while she continues her suit against one or more of the others.

17.     Thereafter, on May 8, 2003, a settlement agreement ("Agreement") was entered into among Richard and Rachel Gonzalez and certain of the defendants.

18.    The Agreement satisfied Richard Gonzalez's Loss of Consortium claim in full for $625,000.00, while reserving Rachel Gonzalez's right to proceed against defendant IDESA to recover any and all damages suffered by her related to the June 11, 1997, elevator accident.

19.    FECA in relevant part states:

> If an injury or death for which compensation is payable under [FECA] is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money . . . . in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury.

*See* 5. U.S.C. § 8132 (emphasis supplied).

20.    Under FECA, 5 U.S.C. § 8149, Congress delegated to the Secretary of the Department of Labor the authority to establish regulations in order to administer and enforce the Act.

21.    Pursuant to such authority, DOL promulgated Regulations to provide how much of any settlement or judgment received by a federal employee must be reimbursed to the United States.

22.    20 C.F.R. 10.705 in relevant part provides:

> If an injury or death for which benefits are payable under the FECA is caused, wholly or partially, by someone other than a Federal employee acting within the scope of his or her employment, the claimant can be required to take action against that third party.

*See* 20 C.F.R. 10.705.

23.    20 C.F.R. 10.710 in relevant part provides:

> Any person who has filed a FECA claim that has been accepted by OWCP (whether or not compensation has been paid), or who has received FECA benefits in connection with a claim filed by another, is required to notify OWCP or SOL

of the receipt of money or other property as a result of a settlement or judgment in connection with the circumstances of that claim. This includes an injured employee, and in the case of a claim involving the death of an employee, a spouse, children or other dependents entitled to receive survivor's benefits . . .

See 20 C.F.R. 10.710 (emphasis supplied).

24. *See* 20 C.F.R. 10.711 in relevant part provides:

The statute permits a FECA beneficiary to retain, as a minimum, one-fifth of the net amount of money or property remaining after a reasonable attorney's fee and the costs of litigation have been deducted from the third-party recovery. The United States shares in the litigation expense by allowing the beneficiary to retain, at the time of distribution, an amount equivalent to a reasonable attorney's fee proportionate to the refund due the United States. After the refund owed to the United States is calculated, the FECA beneficiary retains any surplus remaining, and this amount is credited, dollar for dollar, against future compensation for the same injury, as defined in § 10.719. OWCP will resume the payment of compensation only after the FECA beneficiary has been awarded compensation which exceeds the amount of the surplus.

(a) The refund to the United States is calculated as follows, using the Statement of Recovery form approved by OWCP:

(1) Determine the gross recovery as set forth in § 10.712;

(2) Subtract the amount of attorney's fees actually paid, but not more than the maximum amount of attorney's fees considered by OWCP or SOL to be reasonable, from the gross recovery (Subtotal A);

(3) Subtract the costs of litigation, as allowed by OWCP or SOL (Subtotal B);

(4) Subtract one fifth of Subtotal B from Subtotal B (Subtotal C);

(5) Compare Subtotal C and the refundable disbursements as defined in § 10.714. Subtotal D is the lower of the two amounts.

(6) Multiply Subtotal D by a percentage that is determined by dividing the gross recovery into the amount of attorney's fees actually paid, but not more than the maximum amount of attorney's fees considered by OWCP or SOL to be reasonable, to determine the Government's allowance for attorney's fees, and subtract this amount from Subtotal D.

See 20 C.F.R. 10.711 (emphasis supplied).

25.  *See* 20 C.F.R. 10.712 provides:

(a) If a settlement or judgment is paid to or for more than one individual or in more than one capacity, such as a joint payment to a husband or wife for personal injury and Loss of Consortium or a payment to a spouse representing both Loss of Consortium and wrongful death, the gross recovery to be reported is the amount allocated to the injured employee. If a judge or jury specifies the percentage of a contested verdict attributable to each of several plaintiffs, the [Office] or [solicitor] will accept that division.

(b) In any other case, where a judgment or settlement is paid to or on behalf of more than one individual, OWCP or SOL will determine the appropriate amount of the FECA beneficiary's gross recovery and advise the beneficiary of its determination. FECA beneficiaries may accept OWCP's or SOL's determination or demonstrate good cause for a different allocation. Whether to accept a specific allocation is at the discretion of SOL or OWCP.

*See* 20 C.F.R. 10.712 (emphasis supplied).

26.  OWCP Regulation 10.716 in relevant part provides:

If the required refund is not paid within 30 days of the request for payment, OWCP can, in its discretion, collect the refund by withholding all or part of any payments currently payable to the beneficiary under the FECA with respect to any injury

*See* 20 C.F.R. 10.716.

27.  These regulations are enforced by the Office of Workers Compensation within the DOL, which is also responsible for dispensing the workers' compensation benefits paid to and on behalf of Rachel Gonzalez.

28.  On November 4, 2003, a copy of the Agreement reached between Richard and Rachel Gonzalez and the third-party defendants was sent to OWCP.

29.  On November 20, 2003, the OWCP requested that Rachel Gonzalez provide a statement of her recovery and submit payment to the DOL pursuant to OWCP Regulations 20 C.F.R. 10.705-19.

30.     In response to OWCP's request, Ms. Gonzalez stated that the $625,000 recovery was solely in satisfaction of Richard Gonzalez's Loss of Consortium claim and that the DOL was therefore not entitled to any portion of the settlement.

31.     On June 8, 2004, the OWCP notified Richard and Rachel Gonzalez of the DOL's position that the $625,000 was "jointly received" by Richard and Rachel Gonzalez pursuant to 10.712; therefore, OWCP contended that the recovery was subject to OWCP Regulation 10.711 setting forth the formula for computing DOL's recovery. The OWCP claimed that Rachel Gonzalez had not submitted any evidence that "the recovery of $625,000 was solely for Richard Gonzalez's claim of Loss of Consortium."

32.     On October 29, 2004, Rachel Gonzalez requested that a formal determination regarding the applicability of Regulations 10.705-19 be made by the OWCP in order to trigger her right to further review.

33.     On February 10, 2005, the OWCP again formally found that the $625,000 settlement recovery was "jointly received" by Richard and Rachel Gonzalez, and that the proper allocation to Richard Gonzalez for his Loss of Consortium was only $156,250.00, which represented 25 percent of the total settlement, a figure dictated by the arbitrary formula set forth for Loss of Consortium claims in OWCP 10.712(b).

34.     Rachel Gonzalez subsequently requested a hearing before an OWCP hearing representative, which was held on July 18, 2005.

35.     On September 9, 2005, the OWCP hearing representative affirmed the February 10, 2005, decision of the OWCP, stating that the settlement recovery was issued to both Richard and Rachel Gonzalez, despite the Agreement's allocation of the Loss of Consortium settlement

solely to Richard Gonzalez. Also applying OWCP 10.712(b), the hearing representative again limited Mr. Gonzalez's recovery for his Loss of Consortium claim to 25% of the total amount.

36.     Richard and Rachel Gonzalez filed a timely appeal with the DOL Employee's Compensation Appeals Board ("ECAB") on December 6, 2005.

37.     On December 13, 2006, ECAB affirmed the decision of the OWCP hearing representative and ordered that Richard Gonzalez remit payment of $152,091.16 to the DOL. ECAB found that a "third-party recovery was received by [Rachel Gonzalez] in partial satisfaction of the claims arising against Amtech and ABM resulting from the June 11, 1997 injury." *See* ECAB Decision and Order at 6, attached as Exhibit A. ECAB determined that the "recovery was received" by both Richard and Rachel Gonzalez. *See* Id.

38.     Mr. Gonzalez is not a "beneficiary" under FECA. *See* 5 U.S.C. § 8132; *see also* 20 C.F.R. 10.710. Only if his spouse were to have died would Mr. Gonzalez be a "beneficiary", entitled to receive death benefits under FECA. Rachel Gonzalez did not "receive money" on account of her third-party law suit. Therefore, neither FECA nor the OWCP regulations permit interference with Mr. Gonzalez's receipt of the total $625,000 settlement of his Loss of Consortium claim.

39.     Furthermore, merely because the DOL has determined that Richard Gonzalez's Loss of Consortium claim was "jointly received" does not entitle it to limit his claim to $156,250.00, which represents 25 percent of Mr. Gonzalez's total recovery. FECA does not create this authority. Nor does FECA entitle DOL to limit the expenses due to counsel for pursuing the third-party lawsuit.

40.     Therefore, Richard and Rachel Gonzalez respectfully request that the Court declare that the DOL's conduct is an unconstitutional excess of its statutory authority and further

in violation of its own regulations. Plaintiffs further request the Court to enjoin the DOL from taking any action that irreparably diminishes Rachel Gonzalez's benefits under FECA or seeks recovery of any sums from Richard Gonzalez or his attorneys.

## COUNT I – DECLARATORY JUDGMENT

**A.    DOL's Conclusion that the Settlement Money was "Received" Jointly by Richard and Rachel Gonzalez is an Unconstitutional Abuse of its Statutory Authority.**

41.    Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs 1 through 40.

42.    Plaintiffs seek a declaration that the DOL's conduct is an unconstitutional excess of its statutory authority and in violation of the OWCP regulations pursuant to 28 U.S.C. § 2201.

43.    The DOL does not have the authority to determine that Richard Gonzalez's settlement was "received by" both Richard and Rachel Gonzalez.

44.    DOL concedes that the Agreement states that the parties agreed between themselves to have the settlement distribution of $625,000.00 paid to Richard Gonzalez. *See* ECAB Decision and Order at 6.

45.    Despite this acknowledgement, the DOL unilaterally determined that the settlement was received by Richard and Rachel Gonzalez, solely by virtue of their spousal relationship. In an email correspondence, dated February 28, 2004, the DOL legal representative advised Rachel Gonzalez that the OWCP "was not aware of any case in which [the OWCP] has allowed an entire recovery against one defendant to be allocated for Loss of Consortium." *See* ECAB Decision and Order at 4 (emphasis supplied). This is irrelevant, in that Congress has not authorized DOL to take money from a spouse of a FECA beneficiary who is himself not a beneficiary.

46.    The Agreement explicitly states that the settlement was received by Richard

Gonzalez.  DOL does not have the authority to determine, or <u>disallow</u>, allocation of a recovery

specifically determined by parties in a settlement agreement.

47.    The DOL's determination that it is <u>entitled</u> to a portion of Richard Gonzalez's

recovery under FECA § 8132 is an unconstitutional application of the Act.

**B.    DOL's Promulgation of Regulations that Purport to Permit it to Appropriate
Funds Received by a Spouse of an Injured Federal Employee in a Third Party
<u>Lawsuit is an Unconstitutional Abuse of its Statutory Authority</u>.**

48.    Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs 1

through 47.

49.    The Defendant DOL's misappropriation of a portion of Richard Gonzalez's

settlement is inconsistent with, and an unconstitutional extension of, the reimbursement after

recovery provision found in § 8132 of FECA.

50.    Specifically, FECA states that if an injury or death for which compensation is

payable is caused under circumstances creating a legal liability, and a <u>beneficiary</u> entitled to

compensation from the United States for that injury or death <u>receives money</u> as the result of suit

or settlement by him or in his behalf, the beneficiary shall refund to the United States the amount

of compensation paid by the United States. *See* 5. U.S.C. § 8132 (emphasis supplied).

51.    While under FECA, 5 US.C. § 8149, Congress delegated to the Secretary the

authority to establish regulations in order to administer and enforce the Act, OWCP Regulation

10.710-12, upon which the DOL relies, impermissibly and unconstitutionally expands the

breadth of § 8132, stripping individuals who are not "a beneficiary", i.e., spouses of government

employees, of their settlement recoveries for Loss of Consortium claims.

52.    The unambiguous language of FECA makes no mention of its application to Loss of Consortium recoveries by spouses. Nor does FECA authorize DOL to expand its reach to spouses by virtue of its regulatory authority.

53.    Moreover, reimbursement from a spouse may not be inferred merely from § 8132's use of the word "beneficiary". FECA guarantees government employees injured during the course of employment, or if deceased, a surviving spouse, the right to receive immediate fixed benefits regardless of fault and without need for litigation. Defendant DOL may not therefore require reimbursement from a non-beneficiary like Mr. Gonzalez who has no relation to the workers' compensation scheme operated by OWCP.

54.    Finally, OWCP Regulations 20 C.F.R. 10.705-19 are contrary to the Congressional intent of FECA. FECA was promulgated to encourage the Federal Government to strive to attain the position of "model employer". The OWCP Regulation effectively strips a Loss of Consortium recovery from the spouse of an injured employee, decidedly not "model employer" conduct.

C.    **OWCP Regulation 10.710-12 is Unconstitutional.**

55.    Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs 1 through 54.

56.    The Fifth Amendment of the United States Constitution protects individuals from deprivation of life, liberty, or property, without due process of law.

57.    Richard Gonzalez is neither a DOL employee nor a "beneficiary" under FECA; he is therefore not subject to the FECA recovery provisions or to the OWCP Regulations. FECA requires that employees and beneficiaries reimburse the fund. None of the settlement recovery, however, was allocated to an injured DOL employee, but rather, was allocated to Richard

Gonzalez, a non-employee. Mr. Gonzalez has a property interest in his settlement recovery, and he was deprived of that property without due process of law.

58.     Furthermore, the purpose of FECA § 8132 is to prevent double recovery for government employees. DOL characterizes this underlying purpose as preventing recovery of both wage loss and a recovery from a responsible tortfeasor for the same injury. *See* ECAB Decision and Order at 8.

59.     That purpose has not been frustrated in this case. Richard Gonzalez, in his own capacity, settled a Loss of Consortium claim with third party defendants. He has never, and will never, receive compensation for wage loss or on account of the injury to his spouse. There is, therefore, no possibility of double recovery for Richard Gonzalez.

60.     Moreover, an adverse decision would require Rachel Gonzalez to reimburse money to the DOL of which she is not in possession, or to sacrifice her own benefits on account of her husband's receipt of a Loss of Consortium settlement. Such loss of benefits would be an unconstitutional violation of her property and statutory rights.

**D.    Application of OWCP Regulations to Mr. Gonzalez's Claim Unconstitutionally Preempts State Law.**

61.     Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs 1 through 60.

62.     The District of Columbia recognizes the tort of Loss of Consortium as a distinct cause of action for injury to a marriage itself. Richard Gonzalez's Loss of Consortium claim is independent and distinct from Rachel Gonzalez's negligence claim.

63.     The OWCP also claims to recognize Loss of Consortium as a separate and distinct cause of action in the District of Columbia. *See* ECAB Decision and Order at 8. Notwithstanding this purported recognition, the decision of DOL eviscerates the independence of

14

that claim by requiring Richard Gonzalez to forfeit or limit his recovery purely on account of his spousal relationship to Rachel Gonzalez. The Regulation thus conflicts with the law of the District of Columbia and, therefore, unconstitutionally preempts District of Columbia law.

64.    Where an administrative interpretation of a congressional mandate is inconsistent with state law, Courts may not defer to such an interpretation.

65.    Moreover, the OWCP implementing Regulations are subordinate to FECA, which does not require reimbursement to the DOL from a non-employee who recovers a Loss of Consortium settlement.

### E.    The OWCP Regulations Set Forth Arbitrary Expenses Figures Which Unconstitutionally Interfere With Private Attorney-Client Agreements.

66.    Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs 1 through 65.

67.    OWCP Regulation 10.711 calculates the refund owed to the United States according to the Statement of Recovery form approved by OWCP.

68.    Regulation 10.711 first requires a gross recovery determination. It then sets forth the following arbitrary calculations in reaching a recovery amount for the DOL:

> (2)    Subtract the amount of attorney's fees actually paid, but not more than the maximum amount of attorney's fees considered by OWCP or SOL to be reasonable, from the gross recovery (Subtotal A);
>
> (3)    Subtract the costs of litigation, as allowed by OWCP or SOL (Subtotal B);
>
> (4)    Subtract one fifth of Subtotal B from Subtotal B (Subtotal C);
>
> (5)    Compare Subtotal C and the refundable disbursements as defined in § 10.714. Subtotal D is the lower of the two amounts.
>
> (6)    Multiply Subtotal D by a percentage that is determined by dividing the gross recovery into the amount of attorney's fees actually paid, but not more than the maximum amount of attorney's fees considered by OWCP

> or SOL to be reasonable, to determine the Government's allowance for attorney's fees, and subtract this amount from Subtotal D.

*See* 20 C.F.R. 10.711

69.     Richard and Rachel Gonzalez submitted to the OWCP a summary of actual legal fees and expenses paid. Regulation 10.711 purports to allow the OWCP or the Secretary of Labor to interfere with a private contractual arrangement and unilaterally determine what fees are reasonable. *See* 20 C.F.R. 10.711 (limiting the amount of attorney's fees actually paid, and costs of litigation, to an amount considered by OWCP or SOL to be reasonable). DOL purports to unilaterally preclude costs necessarily associated with the third-party litigation. FECA does not create this authority.

70.     The DOL, therefore unlawfully reduced the expenses of the litigation due counsel without any statutory authority to do so.

71.     Further, in promulgating Regulation 10.711, the OWCP relies on 5 U.S.C. § 8149 which provides only that the Secretary of the Department of Labor "may prescribe rules and regulations necessary for the administration and enforcement of this subchapter [5 U.S.C. §§ 8101 et seq.] including rules and regulations for the conduct of hearings under section 8124." *See* 5 U.S.C. § 8149 (emphasis supplied).

72.     5 U.S.C. § 8149 does not, however, grant the OWCP the authority to determine a maximum amount of attorney's fees or a reasonable cost of litigation.

73.     OWCP Regulation 10.711, therefore, unlawfully exceeds DOL's statutory authority and impermissibly and unconstitutionally establishes arbitrary limits on attorney fees and litigation amounts in calculating the amount DOL believes it is due.

### COUNT II – INJUNCTIVE RELIEF

74.     Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs 1 through 73.

75.     The actions of DOL as alleged herein are causing and will cause irreparable harm to Plaintiffs.

76.     On February 12, 2007, Plaintiffs received a letter from the DOL informing Rachel Gonzalez that interest has been accruing on the $152,091.16 it deems owed since March 9, 2004. The letter also informs Rachel Gonzalez that OWCP Regulation 10.716 states:

> If the required refund is not paid within 30 days of the request of your payment, it can be collected from any payments due under the FECA

*See* February 12, 2007, letter of DOL to J. Michael Hannon, attached as Exhibit B. The letter also asserts that counsel for Rachel Gonzalez is jointly and severally liable for the claimed reimbursement.

77.     Rachel Gonzalez currently receives compensation benefits. The DOL has threatened to suspend these benefits if payment of the unlawful refund is not timely received.

78.     Plaintiffs respectfully request an injunction from the Court enjoining Defendants, Secretary and DOL, from taking any action that would diminish Rachel Gonzalez's benefits under FECA on account of violations alleged in this Complaint or from taking any other action against her or her counsel to recover said amount.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

Declare that the DOL has unconstitutionally demanded payment to it of monies received by Richard Gonzalez;

17

Declare that OWCP Regulation 10.710-12 is an unconstitutional excess of DOL's statutory authority;

Declare that the DOL impermissibly relied upon Regulations and standards which set forth arbitrary figures for attorneys in the representation of their clients.

Grant a permanent injunction preventing the Defendants from taking any action that would diminish Rachel Gonzalez's benefits under FECA on account of violations alleged in this Complaint or seeking any recovery of those amounts from her or counsel; and,

Award Richard and Rachel Gonzalez the costs and attorneys' fees associated with this litigation.

Respectfully submitted,

HANNON LAW GROUP, LLP

J. Michael Hannon, #352526
Carolyn K. Manning, Admitted in Connecticut Only
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax: (202) 232-3704

*Counsel for Plaintiffs Richard and Rachel Gonzalez*

# EXHIBIT A

## United States Department of Labor
## Employees' Compensation Appeals Board

|  |  |
|---|---|
| R.G., Appellant | ) |
|  | ) |
| **and** | )     **Docket No. 06-369** |
|  | )     **Issued: December 13, 2006** |
| **DEPARTMENT OF STATE, FOREIGN** | ) |
| **SERVICE, OFFICE OF EMPLOYEE** | ) |
| **RELATIONS, Washington, DC, Employer** | ) |
|  | ) |

*Appearances:*                                                                                          Oral Argument September 6, 2006
*J. Michael Hannon, Esq.,* for the appellant
*Paul J. Klingenberg, Esq.,* for the Director

## DECISION AND ORDER

Before:
DAVID S. GERSON, Judge
MICHAEL E. GROOM, Alternate Judge

### *JURISDICTION*

On December 6, 2005 appellant, through counsel, filed a timely appeal from a September 9, 2005 decision of the Office of Workers' Compensation Programs' hearing representative, which limited allocation for loss of consortium under a third-party recovery to 25 percent. Pursuant to 20 C.F.R. §§ 501.2(c) and 501.3, the Board has jurisdiction over the merits of the appeal.

### *ISSUES*

The issues are: (1) whether the $625,000.00 third-party recovery that appellant received represented a joint recovery by appellant and her husband, or is solely attributable to the loss of consortium claim of appellant's husband; and, if so, (2) whether appellant met her burden of proof to establish an allocation for loss of consortium in excess of 25 percent.

### *FACTUAL HISTORY*

On June 27, 1997 appellant, then a 49-year-old executive secretary, filed a traumatic injury claim alleging that on June 11, 1997 she sustained injury, when an elevator's deceleration switch failed causing it to suddenly stop. The Office accepted her claim for abdominal

unknown by reason of any matter or thing from the beginning of the world to the date of this Agreement, including but not limited to, all allegations relating to presale and postsale acts or omissions by ABM and Amtech and all claims alleged or that could have been alleged against ABM and Amtech in the Litigation." Appellant and her husband also released IDESA from all presale acts or omissions. The agreement included a reservation to proceed against IDESA to recover any damages for any claims based upon post-sale claims related to the June 11, 1997 elevator accident. Appellant and her husband agreed to "dismiss with prejudice all claims against ABM and Amtech in the Litigation and all presale claims against IDESA in the Litigation." Under paragraph nine of the agreement, it was specified:

> "[The c]onsideration set forth in the first numbered paragraph of this Agreement is the most that Plaintiffs will ever receive from Defendants, ABM and Amtech and Fidelity & Casualty, or Defendants ABM and Amtech and Fidelity & Casualty shall ever be required to pay for any claims relating to the June 11, 1997 elevator accident or to any claims that have been or could have been raised in the Litigation. Plaintiffs accept such consideration specifically without regard to whether Defendants are in fact determined to be joint tortfeasors. This provision is intended to obviate the necessity and expense of having Defendants remain as parties on the record and participate and incur expense in a trial merely for the purpose of determining whether they were tortfeasors so as to entitle any other party to the Litigation and/or any other tortfeasor to a reduction of a verdict."

Under paragraph 10, it was noted that plaintiffs were responsible for determining whether any amount of the settlement was owed to other appropriate parties, including the Office. In paragraph 12, it was noted that the agreement comprised the entire agreement. Paragraph 13 stated that "Defendants understand that Plaintiffs, as between themselves and in consultation with their attorneys, have allocated the consideration paid under this Agreement to [appellant's husband] whose claims will be dismissed in their entirety with prejudice. [Appellant] shall continue to prosecute her claim for damages only against IDESA for postsale claims. This decision is entirely the responsibility of Plaintiffs and their attorneys and shall not otherwise affect the promises contained herein."

By letter dated November 20, 2003, the Office requested that appellant provide a statement of recovery and submit payment of the government's statutory right of refund under 5 U.S.C. § 8132.

On March 9, 2004 appellant's attorney was advised by the Office that appellant had received a third-party recovery in the amount of $625,000.00 dollars. Counsel was advised that previous requests were made to attempt to settle the third-party matter, including requests for a statement of recovery; however, he had not responded. Appellant's representative was informed that he should submit a statement of recovery and a check to the Office made payable to the Department of Labor within 30 days of receipt of the letter.

By letter dated March 19, 2004, appellant's representative provided the Office with a draft of itemized expenses incurred in the pursuit of appellant's claim.

By decision dated September 9, 2005, an Office hearing representative affirmed the February 10, 2005 decision

## *LEGAL PRECEDENT -- ISSUE 1*

The Act, at 5 U.S.C. § 8132, provides in pertinent part:

"If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as a result of suit or settlement by him or on his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury."

With regard to allocation of recoveries between two individuals, such as husband and wife, 20 C.F.R. § 10.712 provides:

"(a) If a settlement or judgment is paid to or for more than one individual or in more than one capacity, such as a joint payment to a husband or wife for personal injury and loss of consortium or a payment to a spouse representing both loss of consortium and wrongful death, the gross recovery to be reported is the amount allocated to the injured employee. If a judge or jury specifies the percentage of a contested verdict attributable to each of several plaintiffs, the [Office] or [solicitor] will accept that division."[5]

## *ANALYSIS -- ISSUE 1*

The Office accepted appellant's claim for abdominal laceration, pelvic cyst, aggravation of pelvic adhesions, bilateral pulmonary embolism, left kidney infection, intracranial hematoma, emergency laparatomy and prolonged post-traumatic stress disorder. By letter dated June 19, 2003, her attorney advised the Office that he had reached a settlement agreement with two out of three of the defendants in the third-party case. He contended that the agreement was solely to satisfy and extinguish the loss of consortium claim of appellant's husband for $625,000.00 dollars. Counsel alleged that the $625,000.00 recovery was not a gross recovery, which could be allocated on appellant's behalf, but represented only the loss of consortium claim.

In support of his position, counsel noted that appellant would continue to pursue her claim against third-party defendant, IDESA. He contended that the Office should accommodate appellant's position that the $625,000.00 payment was solely for her husband's loss of consortium and that it could "obtain enforcement of its lien only pending the outcome of her

---

[5] *See also* the Federal (FECA) Procedure Manual, Part 2 -- Claims, *FECA Third Party Subrogation Guidelines*, Chapter 2.1100(9)(b) ( September 2003), provides that if "a judge or jury specifies the percentage of a contested verdict attributable to each of several plaintiffs, that division will be accepted."

would allow every married couple who receives a settlement to circumvent the Office's statutory right to recovery by structuring their settlements in this manner. The Board notes that there is no order or indication from a judge in this matter signifying an allocation between the parties other than that prescribed within the terms of the settlement agreement.[6]

Consequently, the Board finds that the $625,000.00 settlement represents a joint recovery received by appellant in partial satisfaction of her claims arising out of the accepted injury. The Office is entitled to a portion of the recovery under section 8132 of the Act.

## *LEGAL PRECEDENT -- ISSUE 2*

With respect to the amount of any settlement or judgment that must be refunded, section 8132 provides that "the beneficiary is entitled to retain, as a minimum, at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted; and in addition to this minimum and at the time of distribution, an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States." The Office's regulations at 20 C.F.R. § 10.711(a)(1) provides:

"(a) The refund to the United States is calculated as follows, using the Statement of Recovery form approved by [the Office]:

"(1) Determine the gross recovery as set forth in [section] 10.712;

"(2) Subtract the amount of attorney's fees actually paid, but not more than the maximum amount of attorney's fees considered by [the Office] or SOL [Solicitor of Labor] to be reasonable, from the gross recovery (Subtotal A);

"(3) Subtract the costs of litigation, as allowed by [the Office] or SOL (Subtotal B);

"(4) Subtract one fifth of Subtotal [A] from Subtotal B (Subtotal C);

"(5) Compare Subtotal C and the refundable disbursements as defined in [section] 10.714. Subtotal D is the lower of the two amounts."

"(6) Multiply Subtotal D by a percentage that is determined by dividing the gross recovery into the amount of attorney's fees actually paid, but not more than the maximum amount of attorney's fees considered by [the Office] or SOL to be reasonable, to determine the [g]overnment's allowance for attorney's fees, and subtract this amount from Subtotal D."[7]

---

[6] *Id.*

[7] 20 C.F.R. § 10.711.

7

equivalent to $156,093.75, which reduced the balance to $312,656.25. From this amount, the Office deducted court costs in the amount of $26,627.84 and arrived at a balance of $285,028.41. The Office deducted 20 percent, or $57,005.68, for the statutory recovery that appellant is afforded under the Act, and the balance was reduced to $228,022.73. Finally, the Office subtracted the government's allowance for attorney's fees in the amount of $75,931.57 and determined that the remaining balance of $152,091.16 was due as its refund.

While counsel alleged that the recovery should be treated solely as a recovery by appellant's husband for loss of consortium and not as a joint recovery, the Board does not agree. Under section 10.712, the Office properly allocated 25 percent of the recovery for loss of consortium. The Board notes that by letters dated June 23 and November 20, 2003 the Office requested that appellant provide documentation to support a greater allocation in excess of 25 percent. However, no additional evidence was submitted to establish why an allocation larger than 25 percent should be awarded to appellant's husband. Appellant did not establish entitlement to an allocation greater than 25 percent for loss of consortium.

On appeal, appellant's counsel made numerous arguments which have been addressed in this decision. They include that the settlement agreement was approved by the trial judge and that the settlement should be accepted as a specification by the trial judge regarding the allocation pursuant to 20 C.F.R. § 10.712(a). However, as noted, there is no specific delineation by a trial judge as to how the proceeds were to be allocated.

Appellant's counsel contended that the Office hearing representative erred in finding that the third-party suit was not brought solely by appellant's husband for his loss of consortium. However, the Board notes that the Office hearing representative did not make a specific finding to this effect. The record reflects that he repeated the allegations of appellant's counsel. While counsel alleged that the Office hearing representative's decision was flawed as his explanations regarding the intent of the agreement were ignored, the text of the settlement agreement does not support his contentions. Finally, appellant's counsel alleged that the Office's interpretation of 20 C.F.R. § 10.712(a) preempted State laws and the laws of the District of Columbia concerning loss of consortium. However, the Board notes that the Office's joint recovery statement allocated 25 percent for appellant's husband's loss of consortium claim, consistent with its procedures. The Office properly complied with its regulations and procedures promulgated under 5 U.S.C. § 8132.[12]

---

[12] Appellant also asserts that the Office's actions denied her due process which raises a constitutional question. The Supreme Court has held that constitutional questions are unsuited to resolution in administrative hearing procedures. As the Board is an administrative body, it does not have jurisdiction to review a constitutional claim such as that made by appellant. The federal courts retain jurisdiction over decisions under the Act where there is a charge of a violation of a clear statutory mandate or where there is a constitutional claim. The Board lacks jurisdiction to review the merits of this argument. *Robert F. Stone*, 57 ECAB ___ (Docket No. 04-1451, issued December 22, 2005).

# EXHIBIT B

RECEIVED FEB 1 5 2007

**U.S. Department of Labor**

Office of the Solicitor
Washington, D.C. 20210

**FEB 1 2 2007**

**Suite S-4325**
**200 Constitution Avenue, N.W.**
**Washington, D.C. 20210**



### CERTIFIED MAIL – RETURN RECEIPT REQUESTED

J. Michael Hannon, Esquire
Hannon Law Group, LLP
1901 18th Street, NW
Washington, D.C. 20009

Re:    Rachel Gonzalez
       OWCP File No.: 250508772
       DOI: 06/11/1997

Dear Mr. Hannon:

This is in reference to the above referenced claim filed under the Federal Employees'
Compensation Act (FECA) for injuries sustained on June 11, 1997 by your client, Rachel
Gonzalez, while she was in the performance of duty.

You requested and received a hearing before the Employees' Compensation Appeals
Board (ECAB) because you did not agree with the hearing representative determination
of September 9, 2005. ECAB issued their decision on December 13, 2006 finding that
the $625,000.00 third party recovery you received on behalf of Rachel Gonzalez
represented a joint recovery by both Rachel and her husband, Richard Gonzalez. Also, it
was determined that the burden of proof to establish an allocation for loss of consortium
in excess of 25 percent of the gross recovery had not been met. A copy of that decision is
enclosed for easy reference.

As the enclosed approved long form Statement of Recovery reflects, the Government is
due a statutory refund of $152,091.16 plus interest at the current Treasury Bill rate.
Interest has been accruing on this debt since March 9, 2004. Enclosed is a copy of the
March 9, 2004 letter that informed you that interest would accrue if payment was not
received within thirty days of the date of that letter. Please submit payment within thirty
days of your receipt of this letter. The check should be made payable to "LABOR-
OWCP" and submitted to this office.

Please be advised that you, the Law Offices of Thompson O'Donnell, LLP and your
client, Rachel Gonzalez, are jointly and severally liable for the payment of the
Government's statutory right of reimbursement. Please refer to *Green* v. *United States
Department of Labor*, 775 F.2d 964 (1985).

Under the FECA regulations at 29 CFR Part 10.716 if the required refund is not paid within 30 days of the request for repayment, it can be collected from any payments due under the FECA. Your client is currently receiving compensation payments of $1,413.00 every twenty-eight days and also is receiving medical benefits. All benefits may be suspended if payment is not timely received.

If you have any questions, please contact me at the above address or call me at (202) 693-5329.

Sincerely,

*Gertrude G. Gordon*

Gertrude G. Gordon
Chief, Subrogation Unit

Enclosures

cc: Randall Hunt Norton, Esquire
    Law Offices of Thompson O'Donnell, LLP
    1212 New York Avenue, N.W.
    Washington, D.C.   20005

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

07 - 593
C RBW

### I. (a) PLAINTIFFS

Richard F. Gonzalez and Rachel Gonzalez

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

J. Michael Hannon, Esq.
HANNON LAW GROUP, LLP
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907

### DEFENDANTS

United States Department of Labor and Elaine L. Chao, in her official capacity as Secretary of Labor

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

Case: 1:07-cv-00593
Assigned To : Walton, Reggie B.
Assign. Date : 3/28/2007
Description: GONZALEZ v. DEPT. of LABOR

(202) 693-5328

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

○ **B. Personal Injury/ Malpractice**

◉ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

Court Name: District of Columbia
Division: 1
Receipt Number: 4615003197
Cashier ID: lwebb
Transaction Date: 03/28/2007
Payer Name: Hannon Law Group

CIVIL FILING FEE
For: Hannon Law Group
Amount:      $350.00

CHECK
Check/Money Order Num: 1534
Amt Tendered: $250.00

CASH
Amt Tendered: $100.00

Total Due:      $350.00
Total Tendered: $350.00
Change Amt:      $0.00

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged.  A $45 fee will be charged for a returned check.

**OR**  ○ **F. Pro Se General Civil**

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

eal 28 USC 158
hdrawal 28 USC 157

titions
th Penalty
ndamus & Other
il Rights
son Condition

ghts
yrights
ent
demark

Suits
s (US plaintiff or
dant
-Third Party 26
 7609

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255* | *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Complaint for declaratory & injunctive relief under 28 U.S.C. §2201 for actions against Plaintiffs regarding monies received from Loss of Consortium claim

## VII. REQUESTED IN COMPLAINT

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____    Check YES only if demanded in complaint

JURY DEMAND:   YES ☐   NO ☒

## VIII. RELATED CASE(S) IF ANY

(See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE March 26, 2007 ✓   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

3/28/07

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

JTC

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.