# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD F. GONZALEZ, and )
RACHEL GONZALEZ, )
                      )
       Plaintiffs/Counter-Defendant, )      Civil Action No.: 07-0593 (RBW)
                      )
   v. )
                      )
DEPARTMENT OF LABOR, and )
ELAINE L. CHAO, Secretary of Labor )
                      )
       Defendants/Counter-Plaintiffs. )

## MOTION FOR SUMMARY JUDGMENT

       Plaintiffs Rachel Gonzalez and Richard Gonzalez, by and through their attorneys,

HANNON LAW GROUP, LLP, respectfully move this Court pursuant to Federal Rule of

Civil Procedure 56, to enter summary judgment in favor of Plaintiffs in this matter.

       In support of this motion, Plaintiffs refer the Court to their Statement of Material

Facts Not In Dispute, Agency Record Excerpt, Memorandum of Points and Authorities,

and form of Order filed herewith.

                               Respectfully submitted,

                               HANNON LAW GROUP, LLP


                         _____*/s/ J. Michael Hannon*_____
                         J. Michael Hannon, #352526
                         1901 18th Street, NW
                         Washington, DC 20009
                         (202) 232-1907
                         Fax:  (202) 232-3704

                         *Counsel for Plaintiffs Richard and Rachel*
                         *Gonzalez*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a copy of the foregoing Motion for Summary Judgment, Statement of Material Facts Not in Dispute, Memorandum of Points and Authorities in Support of Motion for Summary Judgment and form of Order were sent via electronic filing, this 6th day of February 2008, to:

Alan Burch, Esq.
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530

*/s/ J. Michael Hannon*
J. Michael Hannon

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD F. GONZALEZ, and | ) | |
| RACHEL GONZALEZ, | ) | |
| | ) | |
| Plaintiffs/Counter-Defendant, | ) | Civil Action No.: 07-0593 (RBW) |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR, and | ) | |
| ELAINE L. CHAO, Secretary of Labor | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Rachel Gonzalez and Richard Gonzalez, by and through their attorneys,

HANNON LAW GROUP, LLP, respectfully submit the following Memorandum of Points and

Authorities in Support of their Motion for Summary Judgment. Also filed herewith is a

Statement of Material Facts Not in Dispute and an Agency Record Excerpt.

## INTRODUCTION

Rachel and Richard Gonzalez have filed this suit for Declaratory and Injunctive Relief

against the Secretary of Labor and the Department of Labor (collectively "DOL") for actions

taken by DOL in connection with an injury that occurred to Rachel Gonzalez while working as

the Receptionist to the United States Ambassador to Mexico. Rachel and her husband Richard

filed a lawsuit in the Superior Court of the District of Columbia as a result of her work related

injury and Richard's loss of consortium. Richard received $625,000 in settlement of his claim

for loss of consortium while the case was in the trial court. Rachel continued to pursue her claim

for personal injury, which concluded when she lost an appeal to the District of Columbia Court

of Appeals. *See Gonzalez v. Internacional de Elevadores*, 891 A.2d 227 (D.C. 2006).

DOL demanded that Richard reimburse it from his $625,000 settlement for money paid to Rachel under the Federal Employees Compensation Act [FECA]. In the alternative, DOL threatened to discontinue Rachel's ongoing FECA benefits if Richard did not surrender his recovery to DOL.

The Gonzalezes seek a declaration from this Court that DOL has unconstitutionally exceeded its statutory authority by demanding payment to it of money received by Richard in settlement of his loss of consortium claim and by threatening to withhold ongoing workers' compensation benefits to Rachel Gonzalez if he does not. The Gonzalezes exhausted all administrative remedies afforded by DOL, which culminated in a decision by the Employees Compensation Appeals Board [ECAB] of the DOL adverse to them. In its decision, ECAB properly noted that it is powerless to consider the Gonzalezes' constitutional claims, as it must abide by the statutes and regulations of DOL. (AR Tab 45 at 0530 n. 12). The ECAB decision, pre-ordained by the jurisdictional limits imposed on it, set the stage for the Gonzalezes to file suit in this Court for determination of those constitutional claims.

Final determinations by ECAB of FECA claims generally are not subject to judicial review. 5 U.S.C. § 8128(b). However, district courts have jurisdiction to consider constitutional challenges to ECAB decisions. *See Cain v. Dunn*, 2002 U.S. Dist. LEXIS 27673, *11 (D.D.C. 2002); *Woodruff v. Department of Labor*, 954 F.2d 634 (11th Cir. 1992); *LKR* 47 ECAB 171, 177 (1995) [1]; *LTD*, 46 ECAB 366, 376 n. 19 (1994).

---

[1]    As a result in part of a matter litigated before this Court, ECAB decisions should now be cited by the initials of the claimants so as to protect their confidentiality. *See John Doe v. Department of Labor, et al.*, Civil Action No. 05-2449 (RBW).

## FACTUAL BACKGROUND

On June 11, 1997, Rachel Gonzalez was seriously injured while working for the Department of State at the United States Embassy in Mexico City when an elevator's deceleration switch failed, causing it to stop abruptly.  (SMF 1).[2]  Rachel was the Receptionist for the United States Ambassador to Mexico at the time.  As a result of this accident, Rachel suffered devastating injuries: abdominal laceration, aggravation of pelvic adhesions, bilateral pulmonary emboli, left kidney infection, intracranial hematoma, emergency laparatomy, brain and neurological damage evidenced by paresthesis and paresis in her left forearm and hand, left facial droop, marked gait imbalance, left leg limp, motor ataxia and prolonged post-traumatic stress disorder.  (SMF 2).

As a direct result of this accident, her husband Richard suffered a significant loss of consortium and has been the principal care giver of Rachel Gonzalez since her accident.  (SMF 3).  Rachel was permanently disabled and was unable to return to work.  She applied for and qualified for Federal Employees Compensation Act [FECA] benefits administered by the United States Department of Labor [DOL], and she continues to receive appropriate compensation benefits today.  (SMF 4).

On March 21, 2000, Rachel and Richard filed suit in the Superior Court of the District of Columbia against the companies that serviced the Embassy elevators under a contract with the United States: ABM Industries Inc., [ABM], Amtech Elevator Services [Amtech], and Internacional Elevadores S.A., de C.V. [IDESA].  (SMF 5).  Rachel brought a claim for her personal injuries and Richard brought a claim for his loss of consortium.  (SMF 5).  As required by FECA, Rachel Gonzalez provided notice to DOL of her third-party lawsuit.  (SMF 6).  In

---

[2]    "SMF" refers to the Statement of Material Facts Not in Dispute filed herewith.

addition, Rachel through counsel invited the United States to join the suit to assert its indemnification rights under the elevator maintenance contract between the United States and the third-party defendants. (SMF 6). Under the indemnity provision of the contract, the United States would be made whole for the past and future FECA payments to Rachel should any of the defendants be found liable for negligence. (SMF 6). However, the United States did not respond to counsel's request. (SMF 7).

The Gonzalezes' complex lawsuit went forward in the Superior Court with extensive discovery and motions. The issues of liability and jurisdiction that were involved were litigated in the Superior Court before any trial. (SMF 8). In a Memorandum and Order of September 26, 2002, The Honorable A. Franklin Burgess, Jr., denied ABM's and Amtech's motion for summary judgment and dismissed certain claims against IDESA for lack of personal jurisdiction. (SMF 8). As a result of this decision, ABM and Amtech remained defendants and IDESA remained a defendant with respect to tortious acts that occurred prior to its purchase by an unrelated company. (SMF 8).

Thereafter, counsel for Rachel and Richard undertook settlement discussions with the defendants in advance of the Pretrial Conference scheduled in the Superior Court for March 3, 2003. (SMF 9). On February 19, 2003, Rachel and Richard through counsel invited DOL to participate in those settlement discussions because of the substantial lien DOL held against any recovery by Rachel. (SMF 9). By a letter dated February 20, 2003, counsel for Rachel and Richard outlined the benefits to DOL and to the Gonzalezes of DOL's participation in settlement discussions. (SMF 9). Counsel reported to DOL that certain defendants were prepared to pay $600,000 to settle; however, counsel reported that $600,000 would only be appropriate to

compensate Richard for his loss of consortium claim.  Despite this, DOL refused to participate.

(SMF 10).

    Instead, in response to counsel's letter outlining the issues facing the Gonzalezes, counsel

for DOL responded on February 28, 2003, as follows:

> You believe that, given the current expenses of $48,000, it is unreasonable
> to accept even a settlement of $600,000 given the permanency of the claimant's
> injuries and the torturous multiple surgeries which she has endured since this
> accident, unless the DOL lien were somehow deferred.  At this time, I will leave it
> to your judgment as to whether you believe that the $600,000 figure too low to
> accept but your arguments do not persuade me that the government should defer
> (and perhaps ultimately jeopardize) receiving its funds until some future point in
> time.

(SMF 10)(emphasis supplied).

    On March 4, 2003, counsel for Rachel and Richard notified DOL of a request by Judge

Burgess that DOL participate in a second mediation scheduled for March 13, 2003.  (SMF 11).

In reporting on the status of the case, counsel indicated to DOL again that the Gonzalezes were

contemplating a partial settlement and that Richard "has a very meritorious claim in his own

right over which DOL has no claim."  (SMF 11).   Again, DOL did not respond or participate in

the litigation in Superior Court.  (SMF 11).   The effect of DOL's abstention was that the

Gonzalezes were left to develop their own settlement strategy with the advice of counsel, a

strategy that would cope with divergent interests: on the one hand, because Rachel had been paid

FECA compensation, it was her duty to repay it from moneys she might receive in the third party

suit; and, on the other, Richard's claim for loss of consortium was not affected by FECA: he was

paid no FECA compensation and there was no FECA lien against proceeds he might receive.

(Complaint at ¶ 14).

With full notice to DOL, the Gonzalezes constructed a strategy to maximize the value of their independent claims.  They released their claims against the U.S. company defendants; Richard dismissed his claim for loss of consortium against all defendants with prejudice in exchange for payment of $625,000 to him; and, as a condition of settlement of Richard's claim, Rachel continued her claim against the Mexican company defendant, choosing to seek compensation for her devastating injuries from that defendant and allowing her husband to be compensated in full for his loss of consortium claim.  (SMF 12; Complaint at ¶¶ 15-18).).  At the time of the settlement, Rachel's past medical expenses were $367,872; her economic loss was $576,159; her future medical expenses were estimated at $5,000 annually; and, counsel valued her claim at $20 million should there be a verdict in her favor.  (SMF 12).

Following settlement, Rachel and Richard Gonzalez delivered a letter through counsel notifying DOL of the partial settlement and reiterating that they did not believe the Department of Labor had any claim to Richard's $625,000.  (SMF 14).  Rachel reported to DOL that she would pursue her claim against IDESA for full compensation for her injuries.  (SMF 14).  In further correspondence on this matter, counsel for Rachel and Richard Gonzalez reported to DOL, in part, the following:

> We find nothing in either the statute or the Department's Regulations or in the case authorities you and Ms. Carter brought to our attention at our meeting that suggests that allowing the FECA lien to abide the event of the appeal and trial against IDESA is not entirely appropriate and permitted.  In particular, Section 10.712(a), 20 C.F.R. Chapter 1, seems in point.  This section reads: "If a settlement or judgment is paid to or for more than one individual or in more than one capacity, such as a joint payment to a husband or wife for personal injury or loss of consortium or a payment to a spouse representing both loss of consortium and wrongful death, the gross recovery to be reported is the amount allocated to the injured employee".  As applied to the present matter, this section does not allow the Department to claim any of the $625,000 settlement that satisfied Richard Gonzalez's consortium claim.  Only recovery later obtained from IDESA

6

to be reported as the gross recovery by Rachel Gonzalez would be available in
satisfaction of the lien.

Moreover, as we discussed with you, we see no authority in the statute for
the Department to make any claim as to monies received by the spouse of the
injured employee which are entirely his to enjoy in compensation for his loss of
consortium claim.

(SMF 15).

On July 23, 2003, DOL responded to this correspondence and agreed that "[i]f this office

were to determine that the facts and circumstances establish that the settlement was only to and

for the loss of consortium claim, then your argument concerning the right of the United States to

recoup part of that settlement might have merit." (SMF 16). Consequently, DOL requested a

copy of the Settlement Agreement. (SMF 16).

The Settlement Agreement and dismissal documents were provided to DOL on

November 4, 2003, including the portion of the Settlement Agreement stating:

Defendants understand that Plaintiffs as between themselves and in
consultation with their attorneys have allocated the consideration paid under this
Agreement to Richard Gonzalez whose claims will be dismissed in their entirety
with prejudice. Rachel Gonzalez shall continue to prosecute her claim for
damages only against IDESA for post-sale claims.

(SMF 17).

Despite promises to the contrary, DOL initially did not respond substantively to the

Gonzalezes' claim. (SMF 18). Instead, DOL simply sent demands to counsel for reimbursement

under 5 U.S.C. § 8132. (SMF 18). DOL eventually responded to counsel's position that the

Settlement Agreement was to settle only Richard's claim. On June 8, 2004, DOL reported that

"[t]his office is not in agreement with your position" that the $625,000 recovery was solely for

Richard's loss of consortium claim. (SMF 19). In addition, DOL disallowed as costs of the

action $8,970.55 reported by counsel. (SMF 19).

7

On October 28, 2004, Rachel and Richard delivered a letter through counsel requesting a "final determination" by the Office of Workers' Compensation Programs [OWCP] that may then be appealed to the Employees Compensation Appeals Board [ECAB] of DOL.  This was the only process by which the Gonzalezes could join issue with DOL in a federal court.  (SMF 20).  The request was granted and a Notice of Decision was issued on January 3, 2005, by the OWCP which concluded that the $625,000 was jointly received by Rachel and Richard.  (SMF 21).  In addition, the OWCP disallowed certain expenses claimed by counsel and allocated a paltry 25% of the $625,000 to Richard for his loss of consortium claim.  (SMF 21).

In response to this "final determination," Rachel Gonzalez requested an oral hearing on the formal decision, which was held on July 18, 2005.  (SMF 22).  This oral hearing resulted in an affirmation of the Department of Labor's OWCP decision that the Settlement was a joint recovery.  (SMF 23).  Following this determination, the Gonzalezes filed an Application for Review to ECAB on December 5, 2005 and oral argument was heard by ECAB.[3]  (SMF 24).  Following the argument, ECAB issued a Decision and Order sustaining OWCP's determination that the $625,000 was a joint recovery governed by 20 C.F.R. § 10.712(a) and sustaining the allocation of only 25% to Richard.  (SMF 25).

To date Richard Gonzalez has received no payments or benefits from the Department of Labor.  (SMF 26).  Richard Gonzalez received the proceeds of the Settlement Agreement.  (SMF 27).  Rachel Gonzalez has received none of the proceeds, as they are part of her husband Richard's property.  (AR Tab 41 G at 0467-0468).  DOL now demands reimbursement from Richard of $152,091.16.  (AR Tab 45 at 0530).

---

[3]    No transcript of oral argument is produced in ECAB proceedings.

**ARGUMENT**

DOL does not enjoy the constitutional or statutory authority to demand of Richard

Gonzalez reimbursement of FECA benefits paid to Rachel Gonzalez.

**I.     THE PLAIN MEANING OF SECTION 8132 PRECLUDES APPLICATION OF
        ITS PROVISIONS TO NON-BENEFICIARIES OF FECA.**

Congress enacted FECA to provide for a system of no-fault compensation for federal

employees who sustain work related injuries.  The Act recognizes two separate and distinct

groups of beneficiaries: federal employee beneficiaries and non-employee beneficiaries.  In the

event of the death of a federal employee from a work related injury, Congress provided that

FECA benefits are to be paid to the spouse of that federal employee.  In the event of an injury to

the federal employee, only that employee is entitled to medical and wage benefits.  *See* 5 U.S.C.

§ 8133.  Thus, Congress clearly distinguished between a federal employee beneficiary and a non-

employee beneficiary.  Congress did not provide for the spouse of a federal employee to receive

benefits under FECA unless the federal employee dies from the work related injury.

Through FECA, Congress justifiably intended to provide for the right of an agency to

receive reimbursement from a "beneficiary" to whom compensation has been paid under the Act

should that beneficiary receive money from a third party.  Specifically, 5 U.S.C. § 8132

provides:

> If an injury or death for which compensation is payable under
> [FECA] is caused under circumstances creating a legal liability in a
> person other than the United States to pay damages, and a
> <u>beneficiary</u> entitled to compensation from the United States for
> that injury or death receives money . . . in satisfaction of that
> liability as the result of suit or settlement by him or in his behalf,
> <u>the beneficiary</u>, after deducting therefrom the costs of suit and a
> reasonable attorney's fee, shall refund to the United States the
> amount of compensation paid by the United States and credit any

9

> surplus on future payments of compensation payable to him for the
> same injury.

(emphasis supplied).

Interpretation of a statute must begin with the language of the statute itself. *Estate of Cowert v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992); *MCA*, 47 ECAB 148, 149-150 (1995) When the language of a statute is unambiguous, courts must give effect to the statute's clear meaning as written. *Estate of Cowert* at 476. Thus, judicial inquiry into a statute's meaning should end when the statute's language is clear as to the issue. *Id.* at 475. It is also assumed that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 254 (1992).

The plain language of section 8132 clearly demonstrates Congress' intent that reimbursement be made to the United States by a FECA <u>beneficiary</u> if that beneficiary receives money from a third party in satisfaction of the injury to or death of, whichever the case may be, the federal employee. The plain language also makes clear Congress' intent to make this section applicable only to the FECA <u>beneficiary</u>: i.e., the individual entitled to receive compensation from the United States pursuant to FECA. Accordingly, an injured federal employee entitled to compensation under the Act must reimburse the United States only when that employee has received money from a third party in satisfaction of liability for that injury. Correspondingly, a deceased federal employee's spouse who is entitled under FECA to receive compensation must reimburse the United States only if that spouse receives money from a third party in satisfaction of the liability for the employee's death. Here, Congress' intent is clear that the only circumstance under which a spouse should ever be required to reimburse the United States is if

the spouse is a FECA <u>beneficiary</u>, which can only occur if the federal employee has died and the spouse receives money from a third party in satisfaction of liability for that death.

The Supreme Court has held that the scope and application of FECA's reimbursement provisions in § 8132 leave "little room for confusion about the meaning of the language." *United States v. Lorenzetti*, 467 U.S. 167, 173 (1984). The Court noted that only two conditions precedent are imposed by § 8132 before a FECA beneficiary's obligation to reimburse the United States is triggered. Specifically, the first condition is that "the employee must have suffered an injury or death under circumstances creating a legal liability in a third party to pay damages." *Id.* at 174. The second condition is that "the employee <u>or his beneficiaries</u> must have received money or other property in satisfaction of that liability." *Id.* (emphasis supplied). The facts in *Lorenzetti* involved a federal employee who had recovered a judgment from a third party for non-economic damages. The federal employee disputed the government's right to that money, claiming that § 8132 was confined to recovery out of awards or settlements for economic losses of the sort covered by FECA. The Court determined that the two conditions imposed by § 8132's unambiguous language had been met; therefore, the government was entitled to reimbursement out of the proceeds of the third party lawsuit received by the beneficiary. *Id.*

In the instant case, both conditions have not been met. Rachel Gonzalez, a federal employee, has suffered an injury under circumstances possibly creating a legal liability in a third party to pay damages; however, she has not received money, or other property, in satisfaction of that liability. Thus, according to the plain language of § 8132, DOL is not entitled to reimbursement for the compensation paid to Rachel Gonzalez because she has not received any money, or other property, from the third party defendants. In fact, she pursued her claim which

was extinguished by a decision on the merits against her in the District of Columbia Court of Appeals. *See Gonzalez v. Internacional de Elevadores*, 891 A.2d 227 (D.C. 2006).

Neither condition of FECA has been met with respect to Richard. Richard is not a beneficiary under FECA and he has not received money from a covered claim. Richard has received money in compensation of his loss of consortium claim, which is independent of the injury for which Rachel has received compensation, as we discuss more fully below.

## II.    DOL REGULATIONS ARE UNCONSTITUTIONAL AND UNCONSTITUTIONAL AS APPLIED.

Congress delegated to DOL the authority to establish regulations necessary to administer and enforce FECA. *See* 5 U.S.C. § 8149. This authority is not without bounds. DOL cannot assert by regulation more power than it has been granted by Congress. Ignoring the simple and straightforward language of the statute, DOL has promulgated unconstitutional regulations. The regulations promulgated by DOL are unconstitutional because they are in excess of the authority granted to the agency by Congress. *See Brown v. Gardner*, 513 U.S. 115 (1994); *RDK*, 46 ECAB 693, 698 (1995). In addition, the regulations are also unconstitutional as applied to Richard and Rachel Gonzalez.

In cases involving statutory construction, courts will often defer to a reasonable statutory interpretation by the administering agency. *See Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, "a reviewing court should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms." *Estate of Cowart*, 505 U.S. at 476. The Gonzalezes contend that there is no reason for this Court to defer to DOL's regulations as they are not a reasonable interpretation of Congressional intent.

12

A.    **Application of DOL Regulations to Richard Gonzalez Impermissibly and Unconstitutionally Expands the Scope of Section 8132**

FECA includes provisions designed to shift the compensation burden from the United States to any third party who is independently liable for a federal employee's injury or death. The design of § 8132 was to prevent a beneficiary from recovering twice for the same injury: once through FECA and again from a third party defendant.

The right of the federal government to reimbursement created by § 8132 also serves to minimize the cost of the program to the government and to maintain the solvency of the fund from which compensation is paid. The regulations promulgated by DOL that are at issue in this case do not further Congress' purpose. Instead, the effect of the regulations and the manner in which the regulations have been applied unlawfully limits the recovery of non-beneficiaries and expands DOL's rights beyond what Congress clearly intended.

The first regulation relied upon by FECA in demanding reimbursement from Richard and Rachel Gonzalez is contained at 20 C.F.R. § 10.712 and provides as follows:

> (a) If a settlement or judgment is paid to or for more than one individual or in more than one capacity, <u>such as a joint payment to a husband or wife for personal injury and Loss of Consortium</u> or a payment to a spouse representing both Loss of Consortium and wrongful death, the gross recovery to be reported is the <u>amount allocated to the injured employee</u>. If a judge or jury specifies the percentage of a contested verdict attributable to each of several plaintiffs, the [Office] or [solicitor] will accept that division.

(emphasis supplied).

1.    **Spousal Relationship is not a Basis for Deeming Richard Gonzalez a FECA Beneficiary.**

As is apparent from the plain language of the statute, Congress distinguished between a FECA beneficiary federal employee and a FECA beneficiary spouse of a federal employee. DOL also acknowledges this distinction in regulations promulgated pursuant to FECA. In the

13

regulation requiring a FECA beneficiary to notify the OWCP or the Secretary of Labor of recovery from a third party, DOL notes that the regulation encompasses "an injured employee, and in the case of a claim involving the death of an employee, a spouse, children or other dependents entitled to receive survivor's benefits."  20 C.F.R. § 10.710.

Based on the plain language of both the statute and the regulation, spousal relationship alone to an injured federal employee is not a basis for classifying a person as a FECA beneficiary.  The grant of authority under § 8132 does not permit DOL to exercise dominion over the money recovered by a person who is not a FECA beneficiary.  The plain language of the statute clearly limits DOL to seeking refunds only from beneficiaries of FECA who have obtained money from a third party defendant.  Thus, DOL cannot, purportedly pursuant to a congressional grant of authority, assert a right to settlement monies that were awarded exclusively to the spouse of a FECA beneficiary.

Applied to the instant case, DOL cannot claim monies from Richard Gonzalez which they have not paid to him.  DOL has not provided any benefits or services to Richard Gonzalez, as he is neither an employee nor a beneficiary under FECA.  There is nothing in the statute or the regulations to support the proposition that Richard Gonzalez is a beneficiary under FECA, nor has Congress authorized DOL to take money from the spouse of a FECA beneficiary who is himself not a beneficiary.

Reimbursement from a spouse may not be inferred merely from § 8132's use of the word beneficiary.  FECA guarantees government employees injured during the course of employment, or if deceased, a surviving spouse, the right to receive immediate fixed benefits regardless of fault and without need for litigation.  Certainly, any third party recovery received by a government employee who is also a FECA beneficiary, or the spouse of a deceased government

14

employee who is also a FECA beneficiary, is recoverable by the United States. However, in the instant case, the person in receipt of settlement funds is neither a government employee nor the spouse of a deceased government employee and most importantly, cannot accurately be categorized as a FECA beneficiary. Therefore, DOL has no basis on which to consider Richard Gonzalez a beneficiary of FECA, and furthermore, no basis on which to demand reimbursement from Richard Gonzalez from a settlement he received stemming from an individual claim against a third party.

Moreover, at the time of the enactment of FECA, Congress well knew that spouses could bring loss of consortium claims against third parties. Yet, Congress did not contemplate that DOL would have the right to recover against the spouse of a FECA beneficiary who recovers through a loss of consortium claim. Congress provided only for compensation by the government against a FECA beneficiary, not the spouse of a beneficiary recovering for loss of consortium. While DOL might think it a good idea to recover FECA benefits from a spouse's loss of consortium claim, Congress has not authorized such recoveries.

### 2. DOL has no Authority to Determine that the Settlement Amount was Jointly Received by Richard and Rachel Gonzalez.

DOL promulgated 20 C.F.R. § 10.712 to deal with situations in which there is payment made to more than one person or to a single person in more than one capacity. This section provides in part that "[i]f a settlement or judgment is paid to or for more than one individual or in more than one capacity, such as a joint payment to a husband or wife for personal injury or Loss of Consortium or a payment to a spouse representing both Loss of Consortium and wrongful death, the gross recovery to be reported is the amount allocated to the injured employee." 20 C.F.R. § 10.712(a). FECA makes no specific mention of cases of "joint recovery" or how DOL

should handle such scenarios. Therefore, DOL is not authorized by the implementing statute to create such formulas pertaining either to "joint recoveries" or to "loss of consortium" claims.

In any event, even if § 10.712(a) is considered to be within the bounds of authority created by Congress, the section is unconstitutional as applied in this case and has been incorrectly applied, according to its own terms. DOL may not construe its own regulations to express an intent or achieve a purpose they do not express. *See Union of Concerned Scientists v. NRC*, 678 F.2d 327, 381 (D.C. Cir. 1983); *L.R. Willson & Sons, Inc., v. Donovan*, 685 F.2d 664, 675 (D.C. Cir. 1982). Furthermore, although "courts must give deference to an agency's interpretation of its own regulation, the due process clause prevents that deference from validating the application of a regulation that fails to give fair warning of the conduct it prohibits or requires." *Gates & Fox Co. v. Occupational Safety & Health Review Comm'n.*, 790 F.2d 154, 155 (D.C. Cir. 1986). No "fair warning" was provided by a plain reading of the statute and regulation in this case. There was no reason to believe that a non-FECA beneficiary would have his independent claim challenged by DOL.

DOL has determined, without basis, that the recovery to Richard was a "joint payment" to him and Rachel under this regulation. The regulation, however, provides that in the case of a joint recovery the amount to be reported to the agency is the amount allocated to the injured employee. This gross recovery amount is then subject to the repayment scheme created by DOL to determine the amount of that figure that the agency is entitled to as reimbursement for monies distributed pursuant to FECA. *See* 20 C.F.R. § 10.711. Contrary to the unambiguous terms of its own regulation, DOL deemed the $625,000 a joint payment but then ignored the fact that no portion of this amount was allocated to the FECA beneficiary, Rachel Gonzalez. While it is true that agencies may interpret their regulations, this "must not be confused with the power to

16

rewrite unambiguous regulations." *Rhodes v. Johnson*, 153 F.3d 785, 789 (7th Cir. 1998).

Under the unambiguous terms of its own regulations, DOL only has a claim on an amount

received by Rachel Gonzalez, not any received by Richard Gonzalez. The terms of the

settlement agreement clearly demonstrate that the amount recovered was allocated solely to

Richard Gonzalez and solely for his loss of consortium claim.

DOL's application of its own regulation is nonsensical and is outcome determinative.

DOL may not ignore its own regulation when it does not allow it the desired result. *Panhandle

E. Pipe Line Co. v. Fed. Energy Regulatory Comm'n*, 613 F.2d 1120, 1136 (D.C. Cir. 1979)

("The fact that a regulation as written does not provide [the agency] a quick way to reach a

desired result does not authorize it to ignore the regulation or label it 'inappropriate'"). DOL is

attempting to "label" the settlement to circumvent FECA, thus rendering the settlement

"inappropriate". Nor can DOL contend that anyone other than Richard Gonzalez "received"

money from the third party. *See BSP*, 42 ECAP 204, 213, 254 (1990). According to DOL's own

regulation, the allocation of the funds to Richard is determinative of the issue of reimbursement.

*ESJA*, 40 ECAB 748, 753 (1989).

### 3.   DOL's Demands Violate the Fifth Amendment.

Any demand by DOL for reimbursement from the funds received by Richard Gonzalez as

a result of his loss of consortium claim constitutes an unwarranted taking by the government in

violation of Richard's rights protected by the Fifth Amendment. Correspondingly, any

withholding of funds payable to Rachel Gonzalez pursuant to FECA as a result of Richard's

refusal to give into the government's demands constitutes a violation of Rachel's constitutionally

protected property interest in receiving FECA benefits. *See Soeken v. Herman*, 35 F. Supp. 2d

99, 105 (D.D.C. 1999). The government is demanding money from Richard to which it has no

justifiable entitlement.  Richard is not a federal employee, he is not a FECA beneficiary, nor is

he entitled to receive benefits under FECA.  Richard Gonzalez is an individual who has won a

sum of money as a result of successfully negotiating a settlement in an individual claim he

brought in his own name against private companies.  Richard Gonzalez is an individual legal

entity with individual property rights separate and distinct from his wife Rachel.  As such,

Richard Gonzalez does not owe his recovery, or any portion thereof, to the government and any

attempt by the government to take that money or to withhold FECA payments to Rachel because

of Richard's refusal to give in to the government's illegitimate and unauthorized demands, is an

unlawful violation of both Richard and Rachel Gonzalez's Fifth Amendment rights.  The Due

Process Clause protects against this arbitrary deprivation of property.  *Fuentes v. Shevin*, 407

U.S. 67, 81 (1972).

Richard recovered money not due to Rachel's injury *per se*, but due to the injury accrued

to the marriage out of a third party's negligence.  *See Massengale v. Pitts*, 737 A.2d 1029, 1032

(D.C. 1999); *see also Stutsman v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 546

A.2d 367, 373 (D.C. 1988) (recognizing that the "tort of loss of consortium is a distinct cause of

action for injury to the marriage itself involving the prosecution of separate and independent

rights").  DOL is encroaching into territory where it has no business, namely Richard's personal

recovery, in violation of one of the fundamental mandates of due process.  "Its [due process]

purpose . . . is to protect his use and possession of property from arbitrary encroachment – to

minimize substantially unfair or mistaken deprivations of property."  Fuentes, 407 U.S. at 81.

### 4.    DOL Did Not Pursue Any of its Rights.

The statutory scheme enacted by Congress also supports the Gonzalezes' claims in this

matter.  At the outset of the litigation, counsel for the Gonzalezes invited the United States to

participate in the lawsuit to assert its subrogation rights and to asserts its right to full indemnity

of all payments made to Rachel.  The third party defendants were acting under a Contract with

the United States which included the following provision:

> The Contractor expressly agrees to indemnify and to save the Government, its
> officers, agents, servants, and employees harmless from and against any claim,
> loss, damages, injury, and liability, however caused, resulting from or arising out
> of the Contractor's fault or negligence in connection with the performance of
> work under this contract.

(*See* AR Tab 3 at 0019-0020).  The United States did not respond to this invitation.

Moreover, under FECA the United States has the right to take over the litigation and to

direct that litigation as it thought fit in connection with its statutory claims.  5 U.S.C. § 8131.

Counsel for the Gonzalezes dutifully kept DOL fully aware of the litigation and their litigation

strategy.  DOL, throughout this process, had the authority to take control of the litigation and

pursue a settlement which best met the needs of all parties.  DOL chose not to do so.  Instead,

DOL deferred to the "judgment" of counsel for the Gonzalezes.  DOL declined to join the suit

and declined to participate in settlement discussions.

Left alone to pursue the third party litigation, the Gonzalezes chose a settlement strategy

best serving their interests while honoring the request of DOL.  Rachel's claims against IDESA

were preserved while Richard received a fair compensation package for the loss of consortium he

individually suffered as a result of the actions of the third parties.  This settlement strategy in no

way violates § 8132 or DOL regulations in that those rules do not require a beneficiary, in this

case Rachel Gonzalez, to prefer herself over her husband in settlement.  On the contrary, the

statutory scheme provides incentives to injured workers to bring a third party claim.  That

scheme contemplates that strategic decisions regarding whom to sue, where to sue, when to sue,

whether to settle, whether to appeal and every other litigation decision is vested with the worker, her spouse and their attorney.

## B.    DOL by Regulation May Not Preempt State Law.

DOL's arbitrary determination that the spouse of a FECA beneficiary may only recover 25 percent of an overall third party settlement fails to acknowledge the District of Columbia's position on loss of consortium.  The District of Columbia recognizes the tort of loss of consortium as a distinct cause of action for injury to a marriage itself.  *See Massengale v. Pitts*, 737 A.2d 1029, 1032 (D.C. 1999); *see also Stutsman v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 546 A.2d 367, 373 (D.C. 1988) (recognizing that the "tort of loss of consortium is a distinct cause of action for injury to the marriage itself involving the prosecution of separate and independent rights"); *Hitaffer v. Argonne Co., Inc.*, 183 F.2d 811, 820 (D.C. 1950) ("The injury to the *consortium* is an injury to a right which is independent of any right in the other spouse and to which the defendant owes an independent duty."), *overruled on other grounds by Smither and Co. v. Coles,* 242 F.2d 220, 226 (1957).  Thus, according to District of Columbia law, Richard Gonzalez suffered an injury separate and apart from Rachel Gonzalez when she was involved in the elevator accident.  DOL regulations attempting to limit Richard's recovery ignore this element of D.C. law.  Where administration of a Congressional mandate is inconsistent with state law, courts may not defer to such an interpretation.

DOL is unconstitutionally attempting to subvert D.C. tort law by preemption.  *See Gregory v. Ashcroft*, 501 U.S. 452, 460-461 (1991); *Will v. Michigan Dept. of State Police*, 401 U.S. 58, 65 (1989).  "Generally, federal law can preempt state law without an express statement by Congress when the federal statute implies an intention to preempt state law or when state law directly conflicts with federal law.  Congressional intent is the critical question in a preemption

analysis." *Estate of Foster by Foster v. Shalala*, 926 F. Supp. 850, 861-62 (N.D. Iowa 1996). Under FECA the intent of Congress is quite clear, to recover money for the United States that an injured employee receives from a third party (or the benefits that the beneficiary receives due to the employee's death). This is to prevent double recovery. There is no reason for the federal law to preempt state law in this instance, as Richard Gonzalez's tort claim is founded in the common law of the District of Columbia.

"[P]reemption will arise when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 862. In the present case, since the loss of consortium is Richard's claim and he is not within the purview of FECA, there is no reason for FECA to preempt his rights under state law. The District of Columbia tort law places no barrier between FECA achieving its purpose of recouping money paid to injured employees. A similar issue arose in *Estate of Foster by Foster v. Shalala.* In that case, Medicare sought reimbursement for medical expenses paid on behalf of a deceased parent against the children's loss of consortium recovery. The district court found that the loss of consortium claim belonged to the children. 926 F. Supp. at 865-66. Hence, the court found that the preemption question need not be addressed. This is squarely analogous to the present case, where DOL is attempting to recover against Richard Gonzalez's award for his loss of consortium.

Furthermore, construing 20 C.F.R. § 10.712(a) so that it treats the $625,000 settlement received by Richard Gonzalez for his claim of loss of consortium as a payment he received jointly with his wife causes the regulation to preempt, without statutory authority, state law. The District of Columbia clearly recognizes loss of consortium as an independent tort for which damages can be awarded. Modern view of the legal relationship between spouses is that each can maintain property separate and apart from the marital property. DOL is trying to treat them

21

as one entity: money received by one is received by the other.  This view is not authorized by statute and is in direct conflict with the modern view of marital and private property.  Without clear evidence that 5 U.S.C. § 8132 is intended to preempt local law, DOL can neither amend the statute, *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 472-473 (1977), nor issue or construe an implementing regulation to do what the statute does not do – establish a uniform preemptive federal rule that all payments for loss of consortium are jointly "received" by both spouses.

**C.    DOL is Not Authorized to Create an Arbitrary 25% Limit for Loss of Consortium.**

DOL promulgated regulations establishing a repayment scheme by which the amount of a recovery from a third party to be reimbursed to the government by a FECA beneficiary is to be determined.  *See* 20 C.F.R. § 10.711.  Congress provided some guidance with respect to the amount of the recovery that must be reimbursed and the amount the beneficiary is entitled to retain.  Specifically, § 8132 states:

> the beneficiary is entitled to retain, as a minimum, at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted; and in addition to this minimum and at the time of distribution, an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States.

5 U.S.C. § 8132.

There is no language in the Act pertaining to a spouse's loss of consortium claim.  Therefore, DOL cannot limit Richard Gonzalez's loss of consortium recovery to $156,250, which represents 25 percent of the settlement proceeds.  FECA does not create this authority in DOL.  Even if DOL had the authority to promulgate broad policies in administration of the Act, DOL may not arbitrarily determine a percentage that may be taken from a settlement awarded to a non-beneficiary.  DOL asserts in its Counterclaim, the Office of the Solicitor "determines the

appropriate amount of a FECA beneficiary's gross recovery which a FECA beneficiary can

accept." *See* Counterclaim at 12. However, that arbitrary, vague and unilateral determination is

not delegated to DOL anywhere in FECA.

> ### D.      FECA Does Not Entitle DOL to Limit Expenses for Counsel.

DOL promulgated 20 C.F.R. § 10.711 outlining the amount a FECA beneficiary can

retain from any third party recovery.  This provision calculates the refund owed and unilaterally

determines what fees are reasonable.  DOL purports to unilaterally preclude costs necessarily

associated with the third party litigation.  Specifically, § 10.711(a)(2) states that the beneficiary

should "[s]ubtract the amount of attorney's fees actually paid, but not more than the maximum

amount of attorneys fees considered by OWCP or SOL to be reasonable, from the gross

recovery." 20 C.F.R. § 10.711(a)(2).  5 U.S.C. § 8149 does not grant DOL the authority to

determine a maximum amount of attorney's fees or a reasonable cost of litigation.  DOL has

arbitrarily disallowed $8,970.55 in costs presented by counsel for the Gonzalezes.

Section 10.711 purports to allow the OWCP or the Secretary of Labor to interfere with a

private contractual arrangement and unilaterally determine what fees are reasonable.  In

implementing that regulation, the OWCP claims to rely on 5 U.S.C. § 8149 which provides only

that the Secretary of the Department of Labor "may prescribe rules and regulations necessary for

the administration and enforcement of this subchapter [5 U.S.C. §§ 8101 et seq.] including rules

and regulations for the conduct of hearings under Section 8124."  This grant of authority

however does not include the ability to set a maximum amount of attorney's fees or a reasonable

cost of litigation.

Rather, the value of an attorney's services should be determined according to the custom

or rule in the place of his practice, a factor which should be given substantial weight in

ascertaining the value of a "reasonable attorney's fee."  *See Sandoval v. Mitsui Sempaku K. K. Tokyo*, 460 F.2d 1163, 1171 (5th Cir. 1972).  In *Sandoval*, the 5th Circuit Court of Appeals held that the amount of a reasonable attorney's fee is a matter for the court and went on to say that the established maximum fees for attorneys in the First Judicial Department of the State of New York, where the litigation was pending, would govern.  *Id*. at 1170.  While the *Sandoval* court acknowledged that parties are not free to eliminate the word "reasonable" from the statute by private contract, the 5th Circuit also recognized that local custom and rules in contingency fees should inform the determination of a reasonable fee calculation for a FECA reimbursement. Similarly, there should be no arbitrary restrictions imposed on costs of the action.

## CONCLUSION

As a result of the accident Rachel Gonzalez suffered while a government employee, she is totally and permanently disabled from employment and is eligible to receive worker's compensation benefits under the Federal Employees Compensation Act.  Pursuant to § 8132, Rachel Gonzalez is required to reimburse FECA upon receipt of any funds resulting from a judgment against or settlement with a third party defendant.  Rachel Gonzalez unsuccessfully pursued her claim for compensation through trial and an appeal to the District of Columbia Court of Appeals.  She recovered nothing.  The requirement to reimburse FECA therefore has not been implicated and DOL cannot withhold FECA benefits from Rachel.

Nor can DOL demand payment from Richard Gonzalez as he is not a FECA beneficiary and the money he received through a settlement was allocated solely to him in satisfaction of his loss of consortium claim

WHEREFORE, Plaintiffs request that the Court declare that DOL is not entitled to any of the proceeds of the settlement achieved by Richard Gonzalez, declare that DOL is not entitled to withhold FECA benefits from Rachel Gonzalez, and enjoin DOL from further seeking funds from Richard Gonzalez and or withholding FECA benefits from Rachel Gonzalez.

Respectfully submitted,

HANNON LAW GROUP, LLP


_____*/s/ J. Michael Hannon*_____
J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax:  (202) 232-3704

*Counsel for Plaintiffs Richard and Rachel Gonzalez*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD F. GONZALEZ, and | ) | |
| RACHEL GONZALEZ, | ) | |
| | ) | |
|     Plaintiffs/Counter-Defendant, | ) | Civil Action No.: 07-0593 (RBW) |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR, and | ) | |
| ELAINE L. CHAO, Secretary of Labor | ) | |
| | ) | |
|     Defendants/Counter-Plaintiffs. | ) | |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT**
**IN DISPUTE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Rachel and Richard Gonzalez and Counter Defendant Rachel Gonzalez, through their attorneys HANNON LAW GROUP, LLP, respectfully submit this Statement of Material Facts Not in Dispute in Support of their Motion for Summary Judgment. Citations are to the Agency Record Excerpt filed herewith.

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1.     Rachel Gonzalez was seriously injured while working for the Department of State at its Embassy in Mexico City on June, 11, 1997, when an elevator's deceleration switch failed causing it to stop abruptly.  (AR Tab 1 at 0001-0017).

2.     Rachel Gonzalez's injuries included abdominal laceration, pelvic cyst, aggravation of pelvic adhesions, bilateral pulmonary embolism, left kidney infection, intracranial hematoma, emergency laparatomy, brain and neurological damage evidenced by parenthesis and paresis in her left forearm and hand, left facial droop, marked gait imbalance, left leg limp, motor ataxia and prolonged post-traumatic stress disorder.  *Id.*

3.     Richard Gonzalez suffered a significant loss of consortium as a result of Rachel Gonzalez's injuries and has been the principal care giver for Rachel since her accident.  (AR Tab 41, Exhibit E at 0314-0330).

4.     Rachel Gonzalez is totally disabled from employment as a result of the accident.  As a result, she qualified for Federal Employees Compensation Act [FECA] benefits and continues to receive medical and wage benefits.  These benefits are administered by the United States Department of Labor [DOL].  (AR Tab 5 at 0022; AR Tab 45 at 0522-0523).

5.     On March 21, 2000, Rachel and Richard Gonzalez filed suit in the Superior Court for the District of Columbia against the companies that serviced the Embassy elevators under a contract with the United States: ABM Industries Inc., [ABM], Amtech Elevator Services [Amtech], and Internacional Elevadores S.A., de C.V. [IDESA]. Rachel sued for her personal injuries and Richard sued for his loss of consortium.  (AR Tab 1 at 0001-0017).

6.     Pursuant to FECA, Rachel Gonzalez provided notice to DOL of her third-party lawsuit.  (AR Tab 5 at 0022).  In addition, Rachel through counsel invited the United States to join the suit to assert its indemnification rights under the elevator maintenance contract between the United States and the third-party defendants.  Under the indemnity provision of the contract, the United States would be made whole for the FECA payments made and to be made to Rachel.  (AR Tab 3 at 0019-0020).

7.     The United States did not respond to counsel's request.  (AR Tab 4 at 0021).

2

8.    The Gonzalez lawsuit involved complex issues of liability and jurisdiction which were litigated in the Superior Court before any trial.  In a Memorandum and Order of September 26, 2002, The Honorable A. Franklin Burgess, Jr., denied ABM's and Amtech's motion for summary judgment and dismissed certain claims against IDESA for lack of personal jurisdiction.  (AR Tab 41 B at 0237-0255).  The result of the decision was that ABM and Amtech remained defendants and IDESA remained a defendant with respect to tortious acts that occurred prior to its purchase by an unrelated company.

9.    Thereafter, counsel for Rachel and Richard undertook settlement discussions with the defendants in advance of the Pretrial Conference scheduled in the Superior Court for March 3, 2003.  On February 19, 2003, Rachel and Richard through counsel invited DOL to participate in those discussions.  (AR Tab 8 at 0028).  By letter of February 20, 2003, counsel for Rachel and Richard outlined the benefits to DOL and to the Gonzalezes of DOL's participation in settlement discussions.  (AR Tab 9 at 0029-0031).

10.    DOL through counsel refused to participate.  Instead, in response to counsel's discussion of the issues facing the Gonzalezes, counsel for DOL responded on February 28, 2003, as follows:

> You believe that, given the current expenses of $48,000, it is unreasonable to accept even a settlement of $600,000 given the permanency of the claimant's injuries and the torturous multiple surgeries which she has endured since this accident, unless the DOL lien were somehow deferred. At this time, I will leave it to your judgment as to whether you believe that the $600,000 figure too low to accept but your arguments do not persuade me that the government should defer (and perhaps ultimately jeopardize) receiving its funds until some future point in time.

(AR Tab 10 at 0033)(emphasis supplied).

11.    On March 4, 2003, counsel for Rachel and Richard notified DOL of a request from Judge Burgess that DOL participate in a second mediation scheduled for March 13, 2003. In reporting on the status of the case, counsel indicated to DOL that the Gonzalezes were contemplating a partial settlement and that Richard "has a very meritorious claim in his own right over which DOL has no claim." (AR Tab 11 at 0036). Again, DOL did not respond or participate in the litigation in Superior Court, as was its right under 5 U.S.C. § 8131.

12.    Thereafter, having been advised by DOL to exercise his own judgment, counsel advised Richard and Rachel to enter into a partial settlement with defendants which settled Richard's loss of consortium claim in its entirety for $625,000 while preserving Rachel's ability to proceed with her claim for personal injuries against defendant IDESA. At the time of the settlement, Rachel's past medical expenses were $367,872; her economic loss was $576,159; her future medical expenses were estimated at $5,000 annually; and, counsel valued her claim at $20 million should there be a verdict in her favor. (AR Tab 41 at 0156-0164).

13.    The Settlement Agreement provided as follows:

> Defendants understand that Plaintiffs as between themselves and in consultation with their attorneys have allocated the consideration paid under this Agreement to Richard Gonzalez whose claims will be dismissed in their entirety with prejudice. Rachel Gonzalez shall continue to prosecute her claim for damages only against IDESA for post-sale claims.

(AR Tab 41 B at 0254).

14.    On May 8, 2003, Rachel and Richard Gonzalez delivered a letter through counsel notifying DOL of the partial settlement and reiterating that they did not believe the Department of Labor had any claim to Richard's $625,000. (AR Tab 15 at 0061).

4

Rachel intended to and reported to DOL that she would continue to pursue her claim against IDESA for full compensation for her injuries.

15.    On June 19, 2003, in further correspondence on this matter, counsel for Rachel and Richard Gonzalez reported to DOL, in part, the following:

> We find nothing in either the statute or the Department's Regulations or in the case authorities you and Ms. Carter brought to our attention at our meeting that suggests that allowing the FECA lien to abide the event of the appeal and trial against IDESA is not entirely appropriate and permitted.  In particular, Section 10.712(a), 20 C.F.R. Chapter 1, seems in point.  This section reads: "If a settlement or judgment is paid to or for more than one individual or in more than one capacity, such as a joint payment to a husband or wife for personal injury or loss of consortium or a payment to a spouse representing both loss of consortium and wrongful death, the gross recovery to be reported is the amount allocated to the injured employee".  As applied to the present matter, this section does not allow the Department to claim any of the $625,000 settlement that satisfied Richard Gonzalez's consortium claim.  Only recovery later obtained from IDESA to be reported as the gross recovery by Rachel Gonzalez would be available in satisfaction of the lien.
>
> Moreover, as we discussed with you, we see no authority in the statute for the Department to make any claim as to monies received by the spouse of the injured employee which are entirely his to enjoy in compensation for his loss of consortium claim.

(AR Tab 18 at 0070).

16.    On July 23, 2003, DOL responded and agreed that "If this office were to determine that the facts and circumstances establish that the settlement was only to and for the loss of consortium claim, then your argument concerning the right of the United States to recoup part of that settlement might have merit."  Consequently, DOL requested a copy of the Settlement Agreement.  (AR Tab 19 at 0072-0074).

17.    The Settlement Agreement and dismissal documents were provided to DOL on November 4, 2003.  (AR Tab 20 at 0075-0086).

18.     DOL initially did not respond substantively as promised in its July 23, 2003, letter.  Instead, DOL simply sent demands to counsel for reimbursement under 5 U.S.C. § 8132.  (AR Tabs 21, 23).

19.     On June 8, 2004, counsel for DOL reported that "This office is not in agreement with your position" that the $625,000 recovery was solely for Richard's loss of consortium claim.  In addition, DOL disallowed as costs of the action $8,970.55 reported by counsel.  (AR Tab 26 at 0101-0102).

20.     On October 28, 2004, Rachel and Richard Gonzalez delivered a letter through counsel requesting a "final determination" by the Office of Workers' Compensation Program (OWCP) that may then be appealed to the Employees Compensation Appeals Board [ECAB] of DOL.  (AR Tab 29 at 0106-0110; AR Tab 32 at 0117; AR Tab 34 at 0119).

21.     In a Notice of Decision issued on January 3, 2005, the OWCP concluded that the $625,000 was jointly received by Rachel and Richard.  In addition, the OWCP disallowed certain expenses claimed by counsel and allocated only 25% of the $625,000 to Richard for his loss of consortium claim.  (AR Tab 35 at 0120-0127).

22.     On January 31, 2005, Rachel Gonzalez requested an oral hearing on the formal decision, which was held on July 18, 2005.  (AR Tab 37 at 0133; AR Tab 40 at 0140).

23.     The oral hearing, held on July 18, 2005 (AR Tab 41 at 0141-0206) resulted in an affirmation of the Department of Labor's OWCP decision that the Settlement was a joint recovery.  (AR Tab 42 at 0469-0473).

24.     On December 5, 2005, the Gonzalezes filed an Application for Review to ECAB.  (AR Tab 43 at 0474-0506).  Oral argument was heard by ECAB.[1]

25.     On December 13, 2006, ECAB issued a Decision and Order sustaining OWCP's determination that the $625,000 was a joint recovery governed by 20 C.F.R. § 10.712(a) and sustaining the allocation of only 25% to Richard.  (AR Tab 45 at 0522-0531).

26.     Richard Gonzalez has received no payments or benefits from the Department of Labor.  (AR Tab 13 at 0042-0049).

27.     The proceeds of the Settlement Agreement were received by Richard Gonzalez.  (AR Tab 41 G at 0467-0468).  Rachel Gonzalez received none of the proceeds.

Respectfully submitted,

HANNON LAW GROUP, LLP


_____/s/ J. Michael Hannon_____
J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax:  (202) 232-3704

*Counsel for Plaintiffs Richard and Rachel Gonzalez*

---

[1]     No transcript of oral argument is produced in ECAB proceedings.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD F. GONZALEZ, and | ) | |
| RACHEL GONZALEZ, | ) | |
| | ) | |
|     Plaintiffs/Counter-Defendant, | ) | Civil Action No.: 07-0593 (RBW) |
| | ) | |
|     v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR, and | ) | |
| ELAINE L. CHAO, Secretary of Labor | ) | |
| | ) | |
|     Defendants/Counter-Plaintiffs. | ) | |

**ORDER**

On consideration of Richard F. Gonzalez's and Rachel Gonzalez's Motion for Summary

Judgment and the Court being duly advised in the premises, it is, by the Court, this _____ day of

_____ 2008,

**ORDERED**, that Richard F. Gonzalez's and Rachel Gonzalez's Motion of Summary

Judgment is hereby, **GRANTED.**

_____
THE HONORABLE REGGIE B. WALTON
United States District Court Judge