UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD F. GONZALEZ, and ) <br> RACHEL GONZALEZ, ) <br>  ) <br> Plaintiffs/Counter-Defendants, ) <br>  ) <br> v. ) <br>  ) <br> DEPARTMENT OF LABOR, and ) <br> ELAINE L. CHAO, Secretary of Labor ) <br>  ) <br> Defendants/Counter-Plaintiffs. ) | Civil Action No.: 07-0593 (RBW) |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Richard and Rachel Gonzalez, by and through their attorneys HANNON LAW GROUP, LLP, respectfully submit their Opposition to Defendants' Motion for Summary Judgment. Plaintiffs.

**INTRODUCTION**

DOL erroneously claims as the fulcrum of its argument that Rachel Gonzalez "bargained away all her rights" in the Settlement Agreement. Therefore, argues DOL, the $625,000 payment was "Jointly Received" by Rachel and Richard Gonzalez. Because the payment was jointly received, argues DOL, it must then apply the formula of 20 C.F.R. § 10.712(b) – a regulation which it created out of whole cloth – which applies to joint recoveries and loss of consortium claims. Applying that formula, says DOL, allows Richard Gonzalez to retain only 25% of the $625,000 payment. That is so, DOL asserts, because it has limited loss of consortium claims to 25% of a joint recovery, also pursuant to the formula of 20 C.F.R. § 10.712(b). In defense of its application of the formula it promulgated in 20 C.F.R. § 10.712(b), DOL concludes

1

that it has "virtually limitless" discretion to create regulations and apply them to matters that come before it. There is no basis for any of these contentions.

DOL ignores the fact that Rachel Gonzalez did <u>not</u> "bargain away all her rights" in the Settlement Agreement. She retained the right to pursue defendant IDESA, and did so vigorously, expending 273.8 hours of attorney time and 12.3 hours of law clerk time in an effort to make herself whole and satisfy the DOL lien. <u>See</u> Declaration, Exhibit A. Rachel Gonzalez complied with all her obligations to DOL under FECA, and simply failed to receive any recovery in her lawsuit. DOL did not exercise its right under FECA to take over the litigation and made no objection to Rachel Gonzalez and her counsel pursuing the strategy that resulted in the Settlement Agreement and her failed pursuit of IDESA.

Moreover, there is no such thing as a "Joint Recovery" under FECA and no such thing as an allocation for loss of consortium under FECA. Congress has not enacted any legislation that addresses these issues. Rather, these two concepts were created by DOL in its regulation 10.712(b) in order to legislate its view that FECA payments must be subject to set off from an employee's spouse's receipt of a third-party payment. There is absolutely no authorization for such a declaration by DOL in FECA or in its legislative history. In short, DOL did nothing during this process. It chose to treat FECA and its own regulation 10.712(b) as a self-executing lien, which they are not. DOL was free to take the lead in this matter, but declined to do so. It cannot now – by regulations which are <u>ultra vires</u> – obtain a different outcome.

## ARGUMENT

### I. THE STATUTORY AND REGULATORY SCHEME

DOL accurately summarized the statutory scheme regarding DOL's rights as a passive lien-holder; however, DOL neglected to discuss its rights under the FECA scheme which permit

it to control the third-party litigation if it believes its interests are at risk. The passive lien-holder role, upon which DOL relies in this case, is set forth in section 8132. See <u>Green v. United States Dep't of Labor</u>, 775 F.2d 964, 969 (8th Cir. 1985). Section 8132 permits DOL to stand on the sidelines and allow the employee to control the litigation, after which it asserts its automatic lien. Section 8131 of FECA, on the other hand, is a provision of FECA which empowers DOL to control the third-party litigation if it finds its lien-holder rights in jeopardy:

> § 8131. Subrogation of the United States
>
> (a) If an injury or death for which compensation is payable under this subchapter [5 USCS §§ 8101 et seq.] is caused under circumstances creating a legal liability on a person other than the United States to pay damages, the Secretary of Labor may require the beneficiary to—
>
>   (1) assign to the United States any right of action he may have to enforce the liability or any right he may have to share in money or other property received in satisfaction of that liability; or
>
>   (2) prosecute the action in his own name.
>
> An employee required to appear as a party or witness in the prosecution of such an action is in an active duty status while so engaged.
>
> (b) A beneficiary who refuses to assign or prosecute an action in his own name when required by the Secretary is not entitled to compensation under this subchapter [5 USCS §§ 8101 et seq.].
>
> (c) The Secretary may prosecute or compromise a cause of action assigned to the United States. When the Secretary realizes on the cause of action, he shall deduct therefrom and place to the credit of the Employees' Compensation Fund the amount of compensation already paid to the beneficiary and the expense of realization or collection. Any surplus shall be paid to the beneficiary and credited on future payments of compensation payable for the same injury. However, the beneficiary is entitled to not less than one-fifth of the net amount of a settlement or recovery remaining after the expenses thereof have been deducted.

Hence, under section 8131 DOL is given the rights of an active litigant, and under section 8132 the rights of a passive lien-holder. Sections 8131 and 8132 exclusively control the

reimbursement mechanism under FECA. "The only reasonable construction of the statute and the cases interpreting it is that FECA is comprehensive both for the employee and the employer, and the [government's] rights to reimbursement and subrogation, whatever they may have been at common law, are now controlled exclusively by sections 8131 and 8132." Janakes v. United States Postal Service, 768 F.2d 1091, 1095 (9th Cir. 1985); see also State v. McKenney, 268 Ala. 165, 171 (Ala. 1958)("A synonym for the word 'exclusive' is the word 'sole'").

Since these two provisions are the exclusive methods by which DOL can obtain reimbursement of benefits, DOL must comply with this scheme in enforcing its lien-holder rights. In this matter, DOL did not exercise its right to act as an active litigant to protect its interests under section 8131. DOL expressly declined to participate in the litigation. Therefore, this Court must determine whether DOL can assert its role as passive lien-holder under section 8132 under the circumstances presented here. Clearly, section 8132 does not apply to the circumstances of this case on its face:

> Section 8132 provides that
>
> If an injury or death for which compensation is payable under this subchapter [5 USCS §§ 8101 et seq.] is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States.

Section 8132 quite explicitly provides that reimbursement is to be paid by a beneficiary in the event of a recovery under "circumstances creating a legal liability in a person other than the United States to pay damages." Rachel Gonzalez pursued her claim, electing to release her claims against certain defendants in order to pursue her recovery against others. She failed to

4

achieve any recovery.  Richard Gonzalez is not a beneficiary, and cannot be required to disgorge his recovery under section 8132.  Therefore, no compensation is payable to DOL, as it did not elect to take over the litigation as an active litigant under section 8131.  Given this clear choice, DOL cannot rely on section 8132 for its claim in this case.

## II.     RACHEL GONZALEZ DID NOT ABANDON HER CLAIM

Rachel Gonzalez did not abandon her rights in the Settlement Agreement.  DOL is correct in stating that the interpretation of a settlement agreement is a matter of law.  Therefore, DOL is entitled to no deference in its flawed interpretation of the Settlement Agreement.  In its determination that the Settlement Agreement was a joint agreement, DOL asserts that Rachel "bargain[ed] away all her rights."  As noted, she expressly reserved and continued to pursue her claim against IDESA, and complied with all her obligations to DOL under the regulatory and statutory scheme.  Rachel released certain defendants and their insurer in order to effectuate her husband's recovery.  This was a litigation choice she made, in consultation with counsel, which DOL could have undone if it desired.  Instead, DOL expressly instructed counsel to do what was best for the joint clients.

Paragraph 13 of the Settlement Agreement states that:

> Defendants understand that Plaintiffs as between themselves and in consultation with their attorneys have allocated the consideration paid under this Agreement to Richard Gonzalez whose claims will be dismissed in entirety with prejudice. Rachel Gonzalez shall continue to prosecute her claim for damages only against IDESA for post-sale claims.  This decision is entirely the responsibility of Plaintiffs and their attorneys and shall not otherwise affect their promises contained herein.

Settlement Agreement at ¶ 13.  The insurer and parties released in the agreement had potential exposure to Rachel's reserved claim against IDESA.  This paragraph is not surplusage.  Because Rachel reserved this right, the insurer and the parties insisted on indemnification from Rachel

against any claims made against it by IDESA, should Rachel ultimately prevail. The insurer expressly required this indemnification as a condition of the payment to Richard and expressly provided in Paragraph 9 of the Agreement that it would pay no more.

These provisions are express elements of the agreement, manifesting the understanding and acknowledgement that Rachel would seek her recovery elsewhere, and thus the Settlement Agreement was not for her benefit. Furthermore, the payment was issued to counsel's escrow account and then by negotiable instrument paid solely to Richard Gonzalez. Rachel Gonzalez did not "receive" anything from the Agreement, and DOL's insistence to the contrary has no basis in fact. Therefore, as a matter of law, the Settlement Agreement neither gave up Rachel's rights nor caused her to receive any money. Neither DOL nor this Court can undo the terms of the agreement. "Settlement agreements are contracts. As such, the district court cannot alter the terms of the settlement agreement by judicial decree without the parties' consent. To hold otherwise would deny the parties the benefit of their bargain." Silicon Image, Inc. v. Genesis Microchip Inc., 395 F.3d 1358, 1363 (Fed. Cir. 2005). DOL may not belatedly scramble to subscribe its own meaning to the Settlement Agreement, as the "parties [are] the architects of their own settlement structure." Id. To permit DOL this would deprive the parties of the benefit of their negotiated bargain.

Additionally, DOL lacks standing to challenge the Settlement Agreement. "The sole factor in determining [whether a non-settling party], has standing to object to a settlement agreement is whether the agreement causes him plain legal prejudice." Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993). This prejudice occurs when "'the settlement strips the party of a legal claim or cause of action." Hirshon v. Republic of Bol., 979 F. Supp. 908, 912 (D.D.C. 1997). DOL had no legal claim in Richard Gonzalez's recovery, since Richard is not a FECA

beneficiary. Even if Rachel is deemed to have participated in the Settlement Agreement, no prejudice to DOL occurred since she <u>continued</u> her claim, which preserved DOL's legal claim to reimbursement of FECA monies.

Furthermore, since an analysis of the Settlement Agreement is a matter of law, it is inappropriate to accept DOL's invitation to "start from the presumption that Mr. Gonzalez's claims are not independent of his wife's claims." (DOL Mem. at 13). The District of Columbia has "long recognized that the tort of loss of consortium is a distinct cause of action for injury to the marriage itself involving the prosecution of separate and independent rights, even when the claim is joined in the wife's suit for damages for injuries to her by the defendants." <u>Stutsman v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.</u>, 546 A.2d 367, 373 (D.C. 1988) <u>citing</u> <u>Lansburgh & Bros., Inc. v. Clark</u>, 127 F.2d 331, 333 (D.C. Cir. 1942) ("In the prosecution of these separate and independent rights there is no privity, and a judgment against one is not a bar to an action by the other.").

A loss of consortium claim is derivative to the injured spouse's claim only in that the underlying negligence must exist in order to maintain a claim for loss of consortium. <u>Massengale v. Pitts</u>, 737 A.2d 1029, 1033 (D.C. 1999)(holding that even a finding of contributory negligence, a complete bar to a negligence recovery, does not extinguish a loss of consortium claim). In order to establish liability it is obvious that some compensable harm to the injured spouse must have occurred to assert a loss of consortium claim. It is equally obvious that since the injured spouse's contributory negligence does not bar recovery for loss of consortium, the only derivative aspect of loss of consortium claims is that the cause of the underlying injury is a negligent act. "While a loss of consortium action is dependent on the occurrence of an injury to another, the claimant suffers an original injury that is the subject of the action. Thus, the

injury rather than the claim is derivative." Reichelt v. Johns-Manville Corp., 733 P.2d 530, 537 (Wash. 1987). DOL broadly overstates the law by suggesting that Richard's claim is somewhat less of a claim than Rachel's and that as a "completely derivative" claim it must be given less weight or overborne by Rachel's claim.

Since Richard had a separate, independent claim he was free to pursue any strategy he saw fit, and since he has never received compensation from FECA, nor was he a FECA beneficiary, he was not subject to FECA's lien power. The Gonzalezes were two clients, with two distinct claims. They pursued the strategy which, in the absence of DOL participation, was for Richard to settle and release his claim against ABM and Amtech. DOL is correct to assert that counsel for Richard and Rachel was serving two divergent interests. Any conflict of interest was resolved among Richard, Rachel and their counsel. The product of that resolution was that Richard settled and Rachel proceeded. Rachel embraced the same risk she did when suit was first filed: in pursuit of her claim she might lose. That was a choice she knowingly made which DOL was free to overturn under section 8131.

### III.    SECTION 10.712(b) IS UNCONSTITUTIONAL AND IMPROPERLY APPLIED.

The Gonzalezes maintain that 20 C.F.R. § 10.712(b) violates due process and unconstitutionally preempts state law. See Gonzalezes Mem. at 17-18, 20-22. DOL is improperly attempting to apply its FECA lien power to a non-FECA beneficiary in Richard Gonzalez. A regulation cannot be inconsistent with the controlling statute. DOL has done just what the Supreme Court condemned in Brown v. Gardner, 513 U.S. 115, 116 (1994). In that case, Congress had enacted a statute providing no-fault benefits to veterans injured as a result of medical treatment in a VA hospital. The VA and its physicians disagreed with Congress, resenting the implication of granting benefits and fearing the cost. The VA then promptly

enacted a regulation requiring the veteran to demonstrate fault to qualify for benefits. The Supreme Court unanimously concluded that despite decades of allegiance to the fault requirement, the regulation was an unconstitutional abridgement of the clear mandate of Congress.

Similarly, section 10.712(b) legislates a cap on loss of consortium benefits to a spouse of a beneficiary and invents a formula to deprive non-beneficiaries of payments "jointly received." The intent of FECA, embodied in § 8132, is to reimburse the United States for compensation paid to an employee in the event the employee receives third party compensation. This prevents a beneficiary from recovering from a third party as well as through FECA for the same injury. The statute says nothing about non-beneficiaries or loss of consortium claims by non-employees. While an agency is entitled to deference in interpreting a statute, Chevron USA Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842-845 (1984), a regulatory interpretation cannot be contrary to congressional intent. "[T]he basic and unexceptional rule [is] that courts must give effect to the clear meaning of statutes as written. The principle can at times come into some tension with another fundamental principle of our law, one requiring judicial deference to a reasonable statutory interpretation by an administering agency." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992)(citing Chevron). No Chevron discretion is owed to unconstitutional regulations.

FECA does not authorize the determination of a "joint recovery" embodied in section 10.712(b), nor does it authorize an allocation for loss of consortium. Agencies are considered part of the executive branch and may not legislate. See Natural Resources Defense Council v. NRC, 216 F.3d 1180, 1182 (D.C. Cir. 2000). Under Chevron if the intent of Congress is clear, the agency as well as the court must defer to congressional intent. Chevron, U.S.A., Inc. v.

9

NRDC, Inc., 467 U.S. at 842-843.  The intent of Congress in 5 U.S.C. § 8132 could not be clearer.  The statute provides for reimbursement to the United States of money the beneficiary receives, or the beneficiary's designee.  5 U.S.C. § 8132.  Section 10.712(b) extends this reimbursement provision.  In the face of a clear congressional mandate, DOL legislated its view that FECA payments must be subject to set off from an employee's spouse's receipt of a third party payment, completely ignoring the fact that it is not "reimbursement" to collect monies it never dispersed.

In a very similar case before the Washington State Supreme Court, the State Department of Labor and Industries sought reimbursement from a spouse's loss of consortium recovery.  The Washington State Supreme Court refused to allow reimbursement of workers compensation benefits from an employee's spouse.  "Because the Department's payment of benefits does not cover damages for loss of consortium, a beneficiary recovering these damages from a third party does not receive a 'double recovery.'"  Flanigan v. Dep't of Labor & Indus., 123 Wn.2d 418, 425 (Wash. 1994).  Since workers' compensation benefits were not disbursed for loss of consortium, there was nothing to reimburse.  "Absent a contrary legislative intent, we construe statutory language according to its plain and ordinary meaning.  The term 'reimburse' means 'to pay back (an equivalent for something taken, lost, or expended) to someone: repay.'"  Flanigan v. Dep't of Labor & Indus., 123 Wn.2d at 426.  Since Richard Gonzalez received nothing from DOL, he has nothing to "pa[y] back".  "Here, the Department did not pay any compensation for loss of consortium.  One cannot be 'paid back' compensation one never paid in the first place."  Id.

The Gonzalezes adopt the argument presented in their motion for summary judgment that DOL has improperly and unconstitutional applied section 10.721(b).

**IV.     THE STATUTORY SCHEME WAS HONORED.**

Rachel Gonzalez duly followed the statutory and regulatory scheme in pursuing her case and notifying DOL of her case and inviting them to participate.  DOL chose not to assert its role as active litigant pursuant to section 8131.  Rachel and her counsel exhausted their efforts to recover for her injuries from third parties.  Since she ultimately failed, there is nothing to recover pursuant to DOL's passive lien-holder status under section 8132.

**V.      THE GONZALEZES OWE NO DEBT TO DOL.**

Richard Gonzalez's contested settlement money is not properly categorized as a "debt" owing to the United States.  The amount DOL terms the "debt" is the very amount in controversy here which was preserved in counsel escrow account.  This matter is currently under adjudication and has not yet been decided.  The Federal Debt Collection Procedure Act is written in the present tense, defining "a debt . . . [as] one that is owing." United States v. Cap Quality Care, 400 F. Supp.2d 295, 299 (D. Me. 2005)(subsequent appellate history does not affect FDCPA discussion); 28 U.S.C. § 3200(3).  Since the very question before this Court is whether DOL has any right to Richard's recovery, this money cannot be considered to be presently owed to the United States.  DOL's interpretation "would read the definition of 'debt' out of the Act and . . . would allow the federal government to seek prejudgment remedies in virtually every civil action it might file." Cap Quality Care, 400 F. Supp.2d at 299.

## **CONCLUSION**

For the forgoing reasons, the Gonzalezes respectfully submit that DOL's Motion for Summary Judgment and request for a 10% surcharge on the contested Settlement Agreement be denied.

Dated March 5, 2008						Respectfully submitted,

								HANNON LAW GROUP, LLP


								_____/s/ J. Michael Hannon_____
								J. Michael Hannon, #352526
								1901 18th Street, NW
								Washington, DC 20009
								(202) 232-1907
								Fax:  (202) 232-3704
								jhannon@hannonlawgroup.com
								*Counsel for Plaintiffs Richard and Rachel Gonzalez*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition was sent via electronic filing, this 5th day of March 2008, to:

Alan Burch, Esq.
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530

                                                           */s/ J. Michael Hannon*
                                                           J. Michael Hannon

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD F. GONZALEZ, and ) <br> RACHEL GONZALEZ, ) <br>   ) <br> Plaintiffs/Counter-Defendants, ) <br>   ) <br> v. ) <br>   ) <br> DEPARTMENT OF LABOR, and ) <br> ELAINE L. CHAO, Secretary of Labor ) <br>   ) <br> Defendants/Counter-Plaintiffs. ) | Civil Action No.: 07-0593 (RBW) |

**PLAINTIFFS' SUPPLEMENTAL STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Rachel and Richard Gonzalez and Counter Defendant Rachel Gonzalez, through their attorneys HANNON LAW GROUP, LLP, respectfully submit this Supplemental Statement of Material Facts Not in Dispute.

28. Time expended on Rachel Gonzalez's appeal against IDESA consisted of 347.1 attorney hours and 12.4 law clerk hours in an effort to become whole. See Exhibit A, Declaration of Alison M. Barto.

Dated March 5, 2008

Respectfully submitted,

HANNON LAW GROUP, LLP

  /s/ J. Michael Hannon
J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com
*Counsel for Plaintiffs Richard and Rachel Gonzalez*

# EXHIBIT A

Case 1:07-cv-00593-RBW    Document 17-2    Filed 03/05/2008    Page 1 of 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD F. GONZALEZ, and ) | |
| RACHEL GONZALEZ, ) | |
| ) | |
| Plaintiffs/Counter-Defendants, ) | Civil Action No.: 07-0593 (RBW) |
| ) | |
| v. ) | |
| ) | |
| DEPARTMENT OF LABOR, and ) | |
| ELAINE L. CHAO, Secretary of Labor ) | |
| ) | |
| Defendants/Counter-Plaintiffs. ) | |

**DECLARATION OF ALISON M. BARTO**

I, Alison M. Barto, state the following:

1.  I am the Administrative Paralegal for HANNON LAW GROUP, LLP and I am competent to give this Declaration.

2.  I reviewed the time records for the work performed on behalf of Rachel Gonzalez.

3.  The time spent on the appeal against IDESA consisted of 347.1 attorney hours and 12.4 law clerk hours.

Further affiant sayeth not.

I DECLARE UNDER PENALTIES OF PERJURY that the foregoing is true to the best of my knowledge and belief.

March 5, 2008

_____
Alison M. Barto

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD F. GONZALEZ, and <br> RACHEL GONZALEZ, <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> DEPARTMENT OF LABOR, and <br> ELAINE L. CHAO, Secretary of Labor <br><br> Defendants/Counter-Plaintiffs. | ) <br> ) <br> ) <br> )   Civil Action No.: 07-0593 (RBW) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

Upon consideration of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and the Court being duly advised in the premises, it is, by the Court, this

_____ day of _____, 2008,

**ORDERED**, that the Defendant's Motion for Summary Judgment is hereby,

**DENIED.**

                                                                                              
THE HONORABLE REGGIE B. WALTON
United States District Court Judge


Copies to:

J. Michael Hannon, Esq.
HANNON LAW GROUP, LLP
1901 18th Street, NW
Washington, DC 20009

Alan Burch, Esq.
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530