UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD F. GONZALEZ, and ) <br> RACHEL GONZALEZ, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DEPARTMENT OF LABOR, and ) <br> ELAINE L. CHAO, Secretary of Labor, ) <br> ) <br> Defendants, ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Counter-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RACHEL GONZALEZ, ) <br> ) <br> Counter-Defendant. ) | Civil Action No.: 07-0593 (RBW) |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Federal Employees Compensation Act ("FECA"), a FECA beneficiary who obtains money or other property by means of a settlement or judgment from a third party must reimburse the United States an amount based upon benefits received. See 5 U.S.C. § 8132. OWCP properly established regulations for calculating such reimbursement, including the treatment of joint settlements and loss of consortium claims. See 20 C.F.R. §§ 10.711 & 10.712. In this case, the United States has a right to reimbursement from Plaintiff, Rachel Gonzalez, in the amount of $152,091.16, because she obtained $625,000, as a result of a joint settlement she and her husband reached with two of the defendants in her third-party liability case.

Throughout this proceeding and the administrative proceedings before, Defendants have maintained that the terms of the Settlement Agreement established beyond dispute that Plaintiffs *jointly* settled their collective claims and that the paragraph they had inserted at the end of the Settlement Agreement did nothing to alter that or change the right of the United States to reimbursement.

       1.      Contradicting the terms of the Settlement Agreement, Plaintiffs assert in this Court that they elected to release Rachel Gonzalez's claims against certain defendants in order to pursue her recovery against others, that they did not bargain away her rights nor abandon her claims. The terms of the settlement are unambiguous: the money was paid jointly to her and her husband; the Gonzalezes were treated as one bargaining unit in the settlement agreement, represented by the same counsel; the release included all claims for both plaintiffs; and Plaintiffs' counsel in the administrative process called the release of claims by Rachel Gonzalez as the "*sine qua non*" of the payment.  Plaintiffs cling to the language in the Settlement Agreement that "Plaintiffs as between themselves . . . have allocated the consideration paid under this Agreement to Richard Gonzalez," but this language, among other things, serves to confirm that the pair of them must have received the money, because otherwise they could not have had any right to make such an "allocat[ion]" at all.  Of course, it remains true that their unilateral attempt to allocate the funds could not bind the government.

      Plaintiffs' opposition memorandum provides a variety of inconsistent and unconvincing explanations of an arrangement that was clearly designed by plaintiffs and their counsel to deprive the United States of its rights to a refund from the settlement proceeds.  Plaintiffs' unconvincing explanations of this arrangement vary from page to page: on page 4, they explain that Rachel released the defendants to pursue others (of course, at the time of settlement, the only

"other" possible defendant was a Mexican company, over which the Superior Court of the District of Columbia had already determined that it lacked personal jurisdiction.); on page 5, they state she released certain defendants to effectuate her husband's recovery, and later on page 5 state that the release did not really release these defendants from exposure to her reserve claims.  First, it stretches credulity that insurers and parties would sign a "release" that still left them exposed to additional claims.  Second, all the releases in the settlement agreement are joint and are in the context of Plaintiffs jointly receiving $625,000.  Third, none of Rachel's claims survived the Settlement Agreement's paragraph 13, which explicitly states that Plaintiffs' claims will be dismissed "in their entirety with prejudice" and that the allocation to Richard did not affect the other promises made in the agreement.

     3.     Plaintiffs' opposition mischaracterizes the FECA statutory scheme for subrogation by dividing §§ 8131 and 8132 into active and passive lien-holder provisions.  Neither of these provisions suggests a passive role on the part of the Secretary.  On the contrary, both of these provisions provide the Secretary with an active role in the enforcement of the United States' right of reimbursement for the costs of FECA covered injuries.  One provision deals with the mechanism to require action to be taken, the other determines how the United States receives the benefits of any recovery.  Section 8131 authorizes the Secretary to ensure that FECA beneficiaries pursue third party claims by giving the Secretary the discretion to require (under penalty of forfeiting FECA benefits) that the beneficiary "prosecute the action in his own name" or assign a claim to the United States.  As DOL has repeatedly told Plaintiffs and Plaintiffs' counsel, there is no authority for the Secretary to intervene or interject herself in a third party action under this provision. Rather, the provision clearly contemplates that either the matter is assigned to the Secretary to prosecute or is prosecuted by the FECA beneficiary.

Section 8132 sets forth the obligations of the FECA beneficiary to reimburse the United States, sets out how DOL is to calculate the reimbursement, and places liability on not only the beneficiary to assure satisfaction of the United States' interest, but also on the attorneys, court, insurer or any other person involved in the distribution of the proceeds of the third party action.

4.      Defendants are neither undoing the terms of the settlement nor attempting to challenge the terms in this proceeding.  Rather, Defendants are simply reading it fairly and attempting to enforce the reimbursement provisions in FECA.

5.      Plaintiffs' attempts to challenge DOL's regulations are wholly without merit.  The Secretary has been charged with the responsibility to administer the terms of the FECA which includes § 8132 and has been given authority to issue regulations to meet her responsibility.  5 U.S.C. §§ 8145 & 8149.  This responsibility and authority has been delegated to OWCP who has issued regulations for the enforcement of § 8132.  20 C.F.R. §§ 10.2 & 10.705-10.719.  Those regulations address the circumstances where a FECA beneficiary enters into a joint settlement.  This is, of course, perfectly reasonable because joint settlements are quite common because claims for loss of consortium are routinely a part of any negligence action.

In recognition of this common occurrence, OWCP has provided a method in which it will calculate the right of reimbursement in cases involving loss of consortium and gives beneficiaries the opportunity to explain how it should be allocated.  20 C.F.R. § 10.712.  OWCP has made the policy decision that it will allow, as a general rule, up to 25% of the joint settlement to be allocated for loss of consortium, the regulations specifically allow beneficiaries the option to seek a higher percentage--something that Plaintiffs' counsel failed to do in the FECA administrative process.

In <u>United States v. Lorenzetti</u>, 467 U.S. 167, 174 (1984) the Supreme Court made it clear only two conditions need to be present for the right of reimbursement to attach: (1) the employee must have suffered an injury or death under circumstances creating a legal liability in a third party to pay damages, and (2) the employee or her beneficiaries must have received money or other property in satisfaction of that liability. In cases of a joint settlement, it is clear that these two conditions are met because a legal liability has been created and the beneficiary is receiving money.

The only question in cases of joint settlement is how much of this money should be allocated to the beneficiaries' claims. In cases involving contested verdict, OWCP accepts the judge's or jury's allocation. 20 C.F.R. § 10.712(a). However, in cases where there is no contested verdict, the regulations provide that OWCP or DOL's Office of the Solicitor will determine the appropriate amount of the beneficiary's recovery. 20 C.F.R. § 10.712(b); <u>see also</u> 20 C.F.R. § 10.705 (delegating the subrogation aspects of certain FECA claims to the Office of the Solicitor. These procedures are clearly consistent with the terms and obligations of the statute and are a reasonable approach to common circumstances arising from third party actions.

Since this case did not involve a contested verdict, SOL provided plaintiffs the opportunity, which they declined, to seek to allocate more than the 25% generally allowed as a deduction to reflect the loss of consortium component of a joint settlement. Since Plaintiffs declined to provide support for a higher percentage, SOL determined the appropriate gross recovery for Rachel Gonzalez by deducting 25% from the gross settlement award and then proceeded to apply the statutory formula to this adjusted amount. Rachel Gonzalez, represented by the same counsel she has now, had a number of opportunities to provide additional information to support a request for a higher percentage for the loss of consortium, but she

5

instead relied on the same tortured reading of the Settlement Agreement that she advances now in this Court.  At no time has SOL attempted to seek reimbursement from Richard Gonzalez.

      6.      Rachel Gonzalez owes a debt and DOL properly determined the amount of that debt.  DOL properly demanded payment and she has failed to pay.  Plaintiffs' opposition fails to set forth any valid argument for denying Defendants' motion for summary judgment.  Plaintiff failed also to contest any of Defendants' Statements of Material Fact.  Accordingly, Defendants are entitled to judgment as a matter of law.

March 26, 2008                      Respectfully submitted,

                                        JEFFREY A. TAYLOR, D.C. Bar # 498610
                                        United States Attorney

                                        /s/
                                        RUDOLPH CONTRERAS, D.C. Bar # 434122
                                        Assistant United States Attorney

                                        /s/
                                        ALAN BURCH, D.C. Bar # 470655
                                        Assistant United States Attorney
                                        555 4th St., N.W.
                                        Washington, D.C. 20530
                                        (202) 514-7204, alan.burch@usdoj.gov