UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| RICHARD GONZALEZ and <br> RACHEL GONZALEZ, <br> <br> Plaintiffs, <br> <br> v. <br> <br> DEPARTMENT OF LABOR, et al., <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-0593 (RBW) <br> ) <br> ) <br> ) <br> ) <br> ) |

**Memorandum Opinion**

This matter is before the Court on the parties' cross-motions for summary judgment ("Pls.' Mot." and "Defs.' Mot.," respectively) pursuant to Federal Rule of Civil Procedure 56.[1] The plaintiffs bring this lawsuit against the Department of Labor ("Labor") and its Secretary seeking declaratory and injunctive relief. After careful review of the several filings submitted by the parties, the Court concludes that the Department of Labor properly concluded that the plaintiffs received a joint award to which the regulatory framework within the Federal Employees

---

[1] In addition to the parties' cross-motions for summary judgment, the following additional papers have been submitted by the parties in conjunction with these motions: (1) the Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem."), (2) the Plaintiffs' Statement of Material Facts Not in Dispute in Support of Motion for Summary Judgment ("Pls.' Stmt."), (3) the Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Opp'n"), (4) the Defendants' Response to Plaintiffs' Statement of Material Facts ("Defs.' Resp."), (5) the Plaintiffs' Reply in Response to Defendants' Opposition to Plaintiffs' Cross Motion for Summary Judgment ("Pls.' Reply"), (6) the Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Defs.' Mem."), (7) the Defendants' Statement of Material Facts Not in Genuine Dispute ("Defs.' Stmt."), (8) the Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Pls.' Opp'n"), (9) the Plaintiffs' Supplemental Statement of Material Facts Not in Dispute in Support of Motion for Summary Judgment ("Pls.' Supp. Stmt."), and (10) the Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Defs.' Reply").

Compensation Act ("FECA"), 5 U.S.C. §§ 8101 (2006), applies, but that this determination did not create a debt obligation prior to the resolution of this lawsuit.  Therefore, the defendants' motion for summary judgment is granted with regard to Mrs. Gonzalez's FECA claim, but denied with regard to the debt collection claim under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3001-3308 (2006).  Furthermore, the plaintiffs' motion for summary judgment is denied as to the FECA claim.

## I.  Factual Background

The following facts are undisputed by the parties.  On June 11, 1997, Rachel Gonzalez was injured in an elevator while performing her duties at the United States Embassy in Mexico City, Mexico.  Pls.' Stmt. ¶ 1; Defs.' Stmt. ¶ 1.  As a result of her injuries, Labor granted workers' compensation benefits to Mrs. Gonzalez under the FECA. Pls.' Stmt. ¶ 4; Defs.' Stmt. ¶ 2.  Mrs. Gonzalez was still receiving these benefits when this case was filed.  Pls.' Stmt. ¶ 4; Defs.' Stmt. ¶ 4.

The legal history of this case dates back to March 21, 2000, when Mrs. Gonzalez and her husband, Richard Gonzalez, filed a third-party lawsuit in the Superior Court of the District of Columbia against ABM Industries, Incorporated ("ABM Industries"), Amtech Elevator Services ("Amtech"), and Internacional de Elevadores S.A., de C.V. ("International"), the companies that serviced the elevator that malfunctioned, causing Mrs. Gonzalez to sustain multiple injuries. Pls.' Stmt. ¶¶ 1-2, 5; Defs.' Stmt. ¶¶ 1, 5; Defs.' Mem., Exhibit ("Ex.") B (Superior Court Complaint) ¶¶ 7-8, 10-11, 15-16.  In the  Superior Court lawsuit, Mrs. Gonzalez sought damages for her injuries, and Mr. Gonzalez sought damages for loss of consortium.  Pls.' Stmt. ¶ 5; Defs.' Stmt. ¶ 5.

On September 25, 2002, the Superior Court dismissed the claims against International, a Mexican company, for lack of personal jurisdiction.  Pls.' Stmt. ¶ 8; Defs.' Mem., Ex. C (Superior Court Memorandum and Order); see also Gonzalez v. Internacional de Elevadores, S.A., 891 A.2d 227, 241 (D.C. 2006) (affirming the dismissal).  The Gonzalezes then engaged in settlement negotiations with ABM Industries and Amtech, which resulted in a settlement agreement being entered into on May 8, 2003.  Pls.' Stmt. ¶ 12; Defs.' Stmt. ¶ 6; Defs.' Mem., Ex. D (Settlement Agreement).  Pursuant to the settlement agreement, the Gonzalezes dismissed all of their claims against ABM Industries and Amtech, in consideration for $625,000.  Pls.' Stmt. ¶ 12; Defs.' Stmt. ¶ 6.  Despite this joint dismissal, the Gonzalezes directed that the entire settlement award be made to Mr. Gonzalez.  Pls.' Stmt. ¶¶ 12-13; Defs.' Mem., Ex. D (Settlement Agreement) at 10, ¶ 13.  Specifically, Paragraph 13 of the settlement agreement states:

> Defendants understand that Plaintiffs as between themselves and in consultation with their attorneys have allocated the consideration paid under this Agreement to Richard Gonzalez whose claims will be dismissed in their entirety with prejudice.  Rachel Gonzalez shall continue to prosecute her claim for damages only against IDESA . . . .  This decision is entirely the responsibility of Plaintiffs and their attorneys and shall not otherwise affect their promises contained herein.

Defs.' Mem., Ex. D (Settlement Agreement), ¶ 13.

Following the settlement agreement, Labor contacted the Gonzalezes' counsel and explained that under 5 U.S.C. § 8132 (2006), Mrs. Gonzalez was required to remit a specified amount of the settlement funds to Labor.[2]  Pls.' Stmt. ¶¶ 14-19; Defs. Mem., Exs. J-

---

[2] 5 U.S.C. § 8132 states, in pertinent part:

If an injury or death for which compensation is payable under this subchapter is
(continued...)

M. Despite Labor's position, the Gonzalezes claimed that the language of Paragraph 13 in the settlement agreement provided that the settlement funds would be paid exclusively to Mr. Gonzalez, precluding any reimbursement obligations by Mrs. Gonzalez. Pls.' Stmt. ¶¶ 14-15; Defs.' Mem., Exs. J-M. Alternatively, Labor claimed that the settlement agreement satisfied both of the Gonzalezes' claims, thereby entitling them to retain only a portion of the award. Pls.' Stmt. ¶ 19; Defs.' Mem., Ex. M. To resolve the matter, Mrs. Gonzalez requested a formal determination by the Office of Workers' Compensation Program ("OWCP or Workers' Comp. Program"), an administrative body within Labor, concerning how much she was obligated to pay Labor from the funds received pursuant to the settlement agreement and for a determination of what amount of the award was attributable to Mr. Gonzalez's lose of consortium claim. Pls.' Stmt. ¶ 20; Defs.' Stmt. ¶ 8; Defs.' Mem., Ex. L.

On January 3, 2005, the Workers' Comp. Program determined that the entire amount of the settlement funds had been jointly awarded to the Gonzalezes. Pls.' Stmt. ¶ 21; Defs.' Stmt. ¶ 8; Defs.' Mot., Ex. Q (Formal Decision). Pursuant to the FECA regulations that structure the allocation of joint third-party settlements, the Workers' Comp. Program limited Mr. Gonzalez's recovery from the settlement agreement to $156,250, which represented twenty-five percent of

---

[2](...continued)
caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury.

the total settlement award.  Pls.' Stmt. ¶ 21; Defs.' Stmt. ¶ 8; Defs.' Mot., Ex. Q (Formal Decision).  Mrs. Gonzalez appealed the Workers' Comp. Program's decision to the Employees' Compensation Appeals Board ("Appeals Board"), which affirmed the Workers' Comp. Program determination.  Pls.' Stmt. ¶¶ 24-25; Defs.' Stmt. ¶ 10.  The Gonzalezes then challenged the Appeals' Board's decision with the filing of this lawsuit.  The defendants answered the plaintiffs' complaint and filed a counter-claim seeking a declaration that Mrs. Gonzalez is liable to the United States for the sum of $152,091.16, plus interest, which represents the total amount of FECA benefits Mrs. Gonzalez had received at the time of filing of this lawsuit.[3]  Defs.' Mem. at 19.

## II. Standard of Review

Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that is capable of affecting the outcome of the litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party."  Id.  The party moving for summary judgment may not rely solely on conclusory allegations but must set forth facts that are significantly probative.  Id. at 249-50.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."  Id. at 255.  Thus, when

---

[3] Labor also asserts that Mrs. Gonzalez owes a ten percent debt to the United States on the value of FECA benefits she received pursuant to the FDCPA, 28 U.S.C. §§ 3001-3308, and asks the Court to enter a ruling to that effect.  Defs.' Mem. at 19.

considering a motion for summary judgment, a court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable influences in [that party's] favor." Galvin v. Eli Lilly & Co., 488 F.3d 1026, 1031 (D.C. Cir. 2007) (internal quotation and citation omitted). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

### III.  Discussion

The Federal Employees Compensation Act, 5 U.S.C. §§ 8101-8152 (2006), provides compensatory benefits to federal employees who are injured in the course of performing their official duties. 5 U.S.C. § 8102. The Secretary of Labor ("Secretary") has the authority to "decide all questions arising under [the FECA]," 5 U.S.C. § 8145, and to promulgate regulations to administer and enforce the FECA program, 5 U.S.C. § 8149.

"[T]o minimize the cost of the FECA program to the Federal Government," United States v. Lorenzetti, 467 U.S. 167, 177 (1984), the Secretary may require employees who were injured by third parties to pursue personal injury claims against those third parties. 5 U.S.C. § 8131. However, regardless of whether the Secretary requires the filing of a lawsuit, a FECA beneficiary who receives compensation through a third-party lawsuit must reimburse Labor for federal funds already paid to the beneficiary as compensation for an injury. 5 U.S.C. § 8132. If that compensation exceeds the cost of the federal funds already paid to the employee, the employee must provide a credit for future FECA expenses, except that a minimum of one-fifth of the net award plus reasonable attorney's fees may be retained by the beneficiary. Id. If the third-party claim results in a joint settlement that does not allocate the award among several plaintiffs, the

Workers' Comp. Program and the Secretary reserve the right to "determine the appropriate amount of the FECA beneficiary's gross recovery." 20 C.F.R. § 10.712(b) (2008).

Although the FECA precludes judicial review of benefit determinations made by Labor, it does not preclude judicial review of reimbursement determinations. See 5 U.S.C. § 8128(b) ("The action of the Secretary or his designee in allowing or denying a [FECA] payment . . . is final and conclusive for all purposes and with respect to all questions of law and fact; and not subject to [judicial] review . . . ."); Lorenzetti, 467 U.S. at 173-79 (reviewing a reimbursement decision without reference to § 8128(b)); Green v. United States, 775 F.2d 964, 968-70 (8th Cir. 1985) (same); Ostrowski v. U.S. Dep't of Labor, Office of Workers Comp. Programs, 653 F.2d 229, 224-31 (6th Cir. 1981) (same).  Under Lorenzetti, Labor must satisfy two requirements before seeking reimbursement from a FECA beneficiary's third-party recovery. 467 U.S. at 173-74. "The first is that the employee must have suffered an injury or death under circumstances creating a legal liability in a third party to pay damages.  The second is that the employee or his beneficiaries must have received money or other property in satisfaction of that liability." Id.

**A.**

The plaintiffs advance various theories as part of their overall argument that Mrs. Gonzalez is not obligated to reimburse Labor any money from the settlement award.  Their theories are as follows: (1) 5 U.S.C. § 8132 does not apply to Mr. Gonzalez because he is not a FECA beneficiary, (2) Labor's application of § 8132 to Mr. Gonzalez exceeded Labor's statutory authority under the FECA, (3) a spousal relationship is not a basis for requiring reimbursement under § 8132, (4) Labor lacked the authority to interpret the terms of the settlement agreement, (5) requiring Mr. Gonzalez to reimburse Labor with his settlement award violates the Takings

Clause of the Fifth Amendment, (6) Labor cannot assert its reimbursement rights because it did not exercise its right to intervene in the third-party liability suit, (7) requiring Mr. Gonzalez to reimburse the federal government from his loss of consortium award unconstitutionally preempts state law governing the loss of consortium claim, (8) Labor exceeded its statutory authority by arbitrarily determining that Mr. Gonzalez should receive only twenty-five percent of the settlement award, and (9) Labor exceeded its statutory authority by limiting Mrs. Gonzalez's attorney's fees to what it deemed reasonable. Pls.' Mem at 9-24.

Because many of these arguments assume that Labor improperly ordered Mrs. Gonzalez to reimburse Labor from an award made solely to Mr. Gonzalez, the Court will first address the plaintiffs' fourth argument–that Labor acted beyond its authority in determining whether the settlement agreement was a joint award.  Pls.' Mem. at 15-17.  If Labor had the authority to make this determination, and therefore the settlement agreement resulted in a joint award, the plaintiffs' first, second, third, fifth, and seventh arguments, which rely upon the conclusion that Labor has inappropriately attempted to obtain reimbursement from a settlement award made exclusively to Mr. Gonzalez, will be rendered moot.

Again, the plaintiffs' fourth theory in support of why they have no obligation to reimburse Labor from the settlement funds is that Labor acted beyond its authority when it determined that the settlement resulted in a joint award.  Pls.' Mem. at 15-17.  The plaintiffs claim that Labor lacked the authority to interpret the settlement agreement because the "FECA makes no specific mention of cases of 'joint recovery' or how [Labor] should handle such scenarios." Pls.' Mem. at 15-16.  On the other hand, Labor asserts that under the FECA it has the "discretionary authority to administer and decide all questions arising under FECA" and thus it "correctly applied its

governing regulations and procedures" when it made its decision regarding the Gonzalezes' case. Defs.' Mem. at 2.  Thus, Labor argues that the plaintiffs' assertion that its determination was beyond its authority "is without merit."  Defs.' Opp'n at 5.  Moreover, Labor argues that the settlement award resulted in a joint award to the Gonzalezes because "the underlying case was brought by both [p]laintiffs [] and the settlement agreement included releases of both [p]laintiffs' rights relating to Ms. Gonzalez's workplace injury."  Defs.' Mem. at 2.

As with any judicial review of an administrative agency decision, the Court turns to Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837 (1984), in determining whether Labor acted within its statutory authority. Under the two-part Chevron test, the Court must first ask whether Congress directly addressed "the precise question at issue."  Id. at 842.  If Congress has not directly addressed "the precise question at issue," the Court must then ask "whether the agency's answer is based on a permissible construction of the statute."  Id. at 843. If either question results in the affirmative response, then the agency acted within its statutory authority.  Id. at 843-44.  The Court concludes that Labor acted appropriately.

Pursuant to the FECA, the Secretary has the express authority to "decide all questions arising under [the FECA]."  5 U.S.C. § 8145.  The plaintiffs are correct that this delegation does not expressly authorize Labor to interpret ambiguous settlement agreements; however, the statute does expressly allow Labor to "decide all questions arising under [the FECA]."  Here, Labor interpreted the settlement agreement to determine whether a FECA beneficiary was required, pursuant to § 8132, to reimburse Labor for her previous and future FECA payments from funds received in a third-party lawsuit.  Because this was a "question[] arising under [the FECA]," Labor's interpretation of the settlement agreement was, at a minimum, "permissible."  Chevron,

467 U.S. at 843. Having concluded that Labor had the authority to interpret the settlement agreement, the Court now turns to whether Labor's interpretation of the agreement was proper.

Contract law guides the interpretation of settlement agreements. <u>Makins v. District of Columbia</u>, 277 F.3d 544, 546 (D.C. Cir. 2006); <u>Gaines v. Cont'l Mortgage & Inv. Corp.</u>, 865 F.2d 375, 378 (D.C. Cir. 1989). When interpreting a contract, the plain language and mutual intent of the parties are paramount. <u>Mesa Air Group, Inc. v. Dep't of Transp.</u>, 87 F.3d 498, 503 (D.C. Cir. 1996); <u>NRM Corp. v. Hercules, Inc.</u>, 758 F.2d 676, 681-82 (D.C. Cir. 1985). Thus, if the terms of a contract are unambiguous, "interpretation of a facially clear contract is considered a question of law and is for the court." <u>NRM Corp.</u>, 758 F.2d at 682. Accordingly, "when the parties' intent is 'wholly unambiguous' on the face of the agreement, disposition on a motion for summary judgment may be appropriate." <u>Id.</u> (citation omitted).

In this case, the plain language of the settlement agreement clearly indicates that the parties mutually agreed upon a joint award being made to the Gonzalezes. The language of the agreement states that both Gonzalezes were dismissing all of their claims against ABM and Amtech in consideration for a joint settlement award from these two defendants. At least three aspects of the agreement support this conclusion. First, the agreement stated that it was "by and between Richard F. Gonzalez and Rachel Gonzalez [and ABM and Amtech]." Defs.' Mem., Ex. D at 1. Second, ABM and Amtech agreed to "pay <u>Plaintiffs</u> the total sum of Six Hundred and Twenty-Five Thousand Dollars." Defs.' Mem., Ex. D at 3 (emphasis added). Third, both Mr. and Mrs. Gonzalez released all of their claims against ABM and Amtech. Defs.' Mem. Ex. D at 4.

Nonetheless, the plaintiffs assert that Paragraph 13 of the settlement agreement reflects a

-10-

mutual agreement between the parties that the funds were being paid to Mr. Gonzalez alone. Pls.' Mem. at 7. However, by its plain language, Paragraph 13 made clear that the "Plaintiffs as between themselves . . . allocated the consideration paid under [the] Agreement" and that the decision to direct the award to Mr. Gonzalez "[was] entirely the responsibility of the Plaintiffs and their attorneys and shall not otherwise affect their promises [t]herein." Pls.' Mem. at 7; Defs.' Opp'n at 2. To conclude that Paragraph 13 limits the scope of the settlement agreement and the award made pursuant to it to Mr. Gonzalez alone would require the Court to ignore the plain language of the agreement as a whole. This the Court cannot do.

Moreover, two additional reasons support the conclusion that the settlement agreement was a joint award to Mr. and Mrs. Gonzalez. First, Mr. Gonzalez's loss of consortium claim was derivative of Mrs. Gonzalez's personal injury claim. See Harbury v. Hayden, 444 F. Supp. 2d 19, 43-44 (D.D.C. 2006) (noting that loss of consortium claims are derivatives of direct personal injury claims); Feirson v. District of Columbia, 362 F. Supp. 2d 244, 254 (D.D.C. 2005) (same). It would be illogical to conclude that the parties intended for the entire settlement award to be solely for a derivative claim, and not also for the claim that gave rise to that claim, when both claims were dismissed as part of the settlement agreement, at least in the absence of clear language to the contrary.

Second, the only legally permissible interpretation of the settlement agreement is that the settlement funds were being paid to both Gonzalezes. This resolution is called for because contracts should be construed based on the presumption that the parties intended to conform to all applicable statutes and regulations. See Walsh v. Schlecht, 429 U.S. 401, 408 (1977). Under the FECA, "[n]o court, insurer, attorney, or other person shall pay or distribute to the beneficiary

or his designee the proceeds of such suit or settlement <u>without first satisfying or assuring satisfaction of the interest of the United States</u>." 5 U.S.C. § 8132 (emphasis added). Additionally, "a FECA beneficiary <u>must</u> . . . [r]efuse to settle or dismiss [a third-party liability] case for any amount less than the amount necessary to repay OWCP's refundable disbursements . . . without receiving permission from OWCP or [Secretary of Labor] ." 20 C.F.R. § 10.707(c) (2008) (emphasis added). Read collectively, these provisions prevented the parties without permission of the United States, from settling Mrs. Gonzalez's claim for less than the amount of her then-existing FECA benefits. Thus, the only reasonable interpretation of the settlement agreement is that the parties agreed to settle, at a minimum, Mrs. Gonzalez's personal injury claims.[4]

Having determined that the settlement agreement conveyed money to both Gonzalezes, it is unnecessary to address the five theories advanced by the plaintiffs that erroneously rely on the presumption that the agreement conveyed a unilateral award to Mr. Gonzalez. What follows then is an assessment of the plaintiffs' sixth, eighth, and ninth arguments, which are independent from that presumption.

The plaintiffs' sixth position argues that 5 U.S.C. § 8131, which allows Labor to direct a FECA beneficiary to assign her third-party liability claim to Labor, requires Labor to pursue its litigation rights against third parties or defer to the outcome of the third-party litigation. Pls.'

---

[4]Although the record does not indicate the actual amount of FECA benefits Mrs. Gonzalez had received at the time of the settlement agreement, the record does indicate that she began receiving FECA benefits well before the settlement agreement was reached. <u>See, e.g.</u>, Pls.' Stmt. ¶ 4 (acknowledging that Mrs. Gonzalez had received FECA benefits); Defs.' Mem., Ex. D (Settlement Agreement) ¶ 10 (requiring that the Gonzalezes hold the elevator companies "harmless for any amounts or liens owed to the Department of Labor.").

Mem. at 18-20. The defendant, however, responds that the

> FECA does not provide for or require intervention. It is specifically provided in [the Act] that the employee shall assign [her] right of action to the United States or the Government shall require the beneficiary to prosecute the action in [her] own name. There is no provision for intervention by the United States in a third party proceeding.

Defs.' Opp'n at 3-4 (internal citation and quotations omitted).

The Supreme Court and the Eighth Circuit have both concluded that Labor's failure to exercise its right to assignment of a FECA beneficiary's claim does not discount its right to reimbursement. Lorenzetti, 467 U.S. at 175-76; Green, 775 F.2d at 970. The Lorenzetti Court rejected a position similar to the Gonzalezes' argument, stating: "[plaintiff] has not explained . . . why § 8132 should be construed to diminish the scope of the United States' reimbursable interest when a third-party action is maintained by the employee himself." Lorenzetti, 467 U.S. at 175-76. The Eighth Circuit, following the lead of Lorenzetti, concluded that "the federal government has unfettered discretion to determine whether to require an assignment of the beneficiary's claim under [§] 8131 or to seek reimbursement from the beneficiary under [§] 8132." Green, 775 F.2d at 970. These authorities require the Court to conclude that Labor's decision to remain uninvolved in the Gonzalezes' liability lawsuit has no bearing on its right to demand reimbursement from the subsequent settlement award.

The plaintiffs assert in their eighth argument that Labor improperly promulgated 20 C.F.R. § 10.711, which they contend arbitrarily assigned a twenty-five percent limit to Mr. Gonzalez's award. Pls.' Mem. at 22-23. The plaintiffs contend that this exceeds Labor's statutory authority under the FECA. Id.

As an initial matter, it bears noting that the plaintiffs had the opportunity to demonstrate

why a greater percentage of the settlement award should have been allocated to Mr. Gonzalez. See 20 C.F.R. § 10.712 (2008) (allowing FECA beneficiaries to show good cause for altering Labor's initial joint allocation determination). Throughout the administrative process, the plaintiffs attempted to make this showing by raising the same arguments advanced here regarding the settlement agreement amounting to an award solely to Mr. Gonzalez. See, e.g., Defs.' Mem., Ex. O at 5. For the reasons outlined above, this argument eschews the plain language of the settlement agreement, and therefore must be rejected. Thus, the administrative decisions rejecting this argument were correct.

The decision to allocate twenty-five percent of the joint award falls properly within Labor's authority. Again, it is unnecessary for Labor to receive an express delegation of its entire authority. See Chevron, 467 U.S. at 843-44. Rather, it is only necessary that Labor act "permissibly" within the statutory authority granted to it. Id. at 843. The FECA authorizes Labor to "decide all questions arising under [the FECA]," 5 U.S.C. § 8145 (2006), and to promulgate regulations to assist in these efforts, id. § 8149. In allocating the award between Mr. and Mrs. Gonzalez, Labor "decide[d] [a question] arising under [the FECA]," namely, how much money each party to the joint settlement award received.

The plaintiffs' ninth argument asserts that Labor exceeded its statutory authority by promulgating 20 C.F.R. § 10.711 (2008). Pls.' Mem. at 23-24. The plaintiffs express specific concern about the part of 20 C.F.R. § 10.711 that allows Labor to limit a FECA beneficiary's attorney's fees to an amount that is reasonable.[5] Id. This argument lacks merit because § 8132 of

---

[5]20 C.F.R. § 10.711(a)(2) states that the Secretary may "[s]ubtract the amount of attorney's fees actually paid, but not more than the maximum amount of attorney's fees
(continued...)

the FECA permits beneficiaries who are obligated to reimburse Labor from third-party settlements to retain "reasonable attorney's fee[s]." 5 U.S.C. § 8132.

Congress expressly delegated the power to "prescribe rules and regulations necessary for the administration and enforcement of [the FECA]" to the Secretary. 5 U.S.C. § 8149. As part of this authorization, the Secretary has the authority to construct a framework for reimbursing the government from third-party liability lawsuits. This framework is guided by § 8132 of the FECA, which imposes two limitations on the Secretary regarding monetary awards obtained by beneficiaries. The first requirement is that the beneficiary must be permitted to retain one-fifth of the settlement amount. Id. The second requirement is that the beneficiary must be permitted to retain "an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States." Id. (emphasis added). The provision in 20 C.F.R. § 10.711 that allows a FECA beneficiary to retain a reasonable attorney's fee is directly authorized by § 8132, because it allows a FECA beneficiary to retain that part of a monetary award that is "reasonable" for the payment of an attorney.

As support for their position, the plaintiffs rely on Sandoval v. Mitsui Sempaku K.K. Tokyo, 460 F.2d 1163, 1170 (5th Cir. 1972), which held that the reasonableness of attorney's fees in FECA third-party liability suits is a question for the courts, and not the administrative agency. After arriving at this conclusion, the Sandoval court held "that a one-third contingency fee meets the test of reasonableness under [§] 8132." Id. In this case, the plaintiffs' attorney's fees were reduced to one-third of Mrs. Gonzalez's portion of the overall settlement award.

---

[5](...continued)
considered by [the Workers' Comp. Program] or [the Secretary] to be reasonable, from the gross recovery."

Defs.' Mem. Ex. N.  In the absence of any other authority, this Court finds no reason to part with the Fifth Circuit's conclusion in Sandoval that (like the attorney fee award made here) one-third of a third-party award was a reasonable attorney's fee.

**B.**

Labor asserts that Mrs. Gonzalez now owes a ten percent debt on the value of Mrs. Gonzalez's reimbursement pursuant to the FDCPA, 28 U.S.C. §§ 3001-3308.  Defs.' Mem. at 19.  Under the FDCPA, a debt is:

> an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other than the United States.

28 U.S.C. § 3002(3)(B).  Of import in this determination is whether a debt "is owing."  The legislative history of the FDCPA indicates that it was enacted for the purpose of reimbursing the federal government for "delinquent debts."  H.R. Rep. No. 101-736 (1990).  With the exception of prejudgment debts, which are only available when the amount owed may become unavailable through the course of litigation, nothing suggests that the intent of the FDCPA was to impose additional financial obligations upon parties engaging in ongoing litigation.

Practical reasons support this conclusion.  Under the defendants' interpretation of the FDCPA, which would allow the defendants to receive a ten percent surcharge on the settlement award, not only would the government receive an additional ten percent windfall every time an administrative appeal is lost, but such a result would discourage beneficiaries from exercising their rights to pursue an appeal.  Nothing in the legislative history suggests that this aligns with

congressional intent.

The defendants rely on Bd. of Governors of the Fed. Reserve Sys. v. Pharaon, 169 F.3d 110 (2d Cir. 1999) ("Pharaon II"), as support for their position. Defs.' Mem. at 19. In Pharaon II, the Second Circuit upheld the assessment of a ten percent surcharge on a debt owed by the defendant. Id. at 113-14. However, in that case, the defendant had already exercised his right to appeal the administrative assessment of a "debt." Id. at 112. In the earlier ruling, the District of Columbia Circuit upheld the civil penalties that had been levied against Pharoan, see Pharaon v. Bd. of Governors of the Fed. Reserve Sys., 135 F.3d 148, 154-57 (D.C. Cir. 1998) ("Pharaon I"), who thereafter failed to pay the required assessment, Pharaon II, 169 F.3d at 112. In this case, the plaintiffs initiated this action as a challenge to the agency's decision, and unlike the defendant in Pharaon, Mrs. Gonzalez is still exercising her legal right to challenge the agency's decision. Pharoan, on the other hand, had already exhausted his judicial challenges to the assessment of a monetary civil penalty. Therefore, even under Pharaon II, until Mrs. Gonzalez exhausts her appeals, she does not owe a "debt" under § 3002(3)(B).

### IV.  Conclusion

For the foregoing reasons, the Court concludes that the Department of Labor properly concluded that the plaintiffs received a joint award within the regulatory framework of the FECA, but that this determination will not become a debt under the FDCPA until the Gonzalez's available judicial challenges are resolved. Because the Court has concluded that Mrs. Gonzalez's FECA obligation is not a debt pursuant to 28 U.S.C. § 3002(3)(B) until the plaintiffs' judicial challenges are exhausted, the plaintiffs' request for summary judgment on their prayer for injunctive relief is GRANTED in part and DENIED in part. Accordingly, the Court will grant

the plaintiffs' request that Mrs. Gonzalez's future FECA benefits, if she is still eligible to receive further benefits, shall not be reduced due to her pursuit of legally available judicial review. Furthermore, as a result of the Court's conclusions, the plaintiffs' summary judgment claim seeking declaratory judgment, which relies upon the conclusion that Labor acted inappropriately or without authority, must fail.

On the other hand, the defendants' motion for summary judgment is granted as to Mrs. Gonzalez's FECA claim, but denied as to its ten percent debt collection counterclaim under § 3011(a) of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3011(a). Thus, Mrs. Gonzalez is liable to the United States of America for the reimbursement sum of $152,091.16, plus any post-judgment interest that accrues following the exhaustion of the plaintiffs' legally available judicial challenges.

**SO ORDERED**.

REGGIE B. WALTON
United States District Judge